Anderson County *v.* Hays.

ANDERSON COUNTY *v.* HAYS.

(*Knoxville.* October 16, 1897.)

1. TRUSTEE'S BONDS. *Proper accounting in suits upon several successive bonds.*

The account should be ordered and stated, in a suit upon a County Trustee's bonds for several successive terms, so as to show the liability for each term separately, in order that the liabilities of the different sets of sureties to the complainant and *inter sese* may appear and be adjudged. (*Post, pp. 547, 548.*)

2. SAME. *Burden on sureties to prove misapplication of funds to other defaults.*

Where, in a suit by a county upon several bonds of a County Trustee given for successive terms, the sureties upon one of the bonds claim that taxes collected for the term covered by that bond have been misappropriated and credited on their principal's default for another term, they must prove, not generally, but by showing specific items, with dates and amounts, that such misapplication has actually occurred, otherwise the presumption will prevail that all credits were properly entered. (*Post, pp. 548–552, 553–555.*)

Cases cited: Gray *v.* State, 95 Tenn., 317; State *v.* Polk, 14 Lea, 7; Yoakley *v.* King, 10 Lea, 67; State *v.* Cole, 13 Lea, 367; State *v.* Orr, 12 Lea, 725; Cox *v.* Hill, 5 Lea, 147; 72 Am. Dec., 206; 1 How., 250; 7 Cranch, 572; 7 How., 688; 1 McLean, 493.

3. SAME. *Liability under, defined.*

Under the bond of a County Trustee, executed since the duties of tax collector were devolved upon that office by Acts 1875, Ch. 91, conditioned that he will faithfully perform the duties of the office, and will faithfully collect and pay over all taxes, etc., the sureties are liable not only for the failure of their principal to faithfully collect and account for taxes, but likewise for his failure to faithfully receive or collect and account for revenues due from the State Comptroller,

Anderson County *v.* Hays.

from the Clerks of Courts, from his predecessor in office, or from others. A single bond thus conditioned covers the entire liability of the Trustee, and obviates the necessity of taking the special bonds required prior to 1875. (*Post, pp. 555–564.*)

Acts construed: Acts 1875, Ch. 91.

Code construed: §§ 860, 1082, 1094, 1398, 6964 (S.);. §§ 712, 949, 961, 1170, 5830 (M. & V.); §§ 426, 599, 761, 773, 5005 (T. & S.).

Cases cited: State *v.* Orr, 12 Lea, 726; State *v.* Polk, 14 Lea, 7.

4. SAME. *Suit upon, broad enough to authorize recovery for all defaults.*

A bill in a suit upon the bond of a County Trustee, which states that "the taxes sued for embrace all county, special, school, bond, courthouse, and all other taxes and revenue due to the county for" specified years from the Trustee, "whether specially mentioned or not," is sufficiently broad to authorize a recovery for all taxes and all other revenues that were received by the Trustee, or should have been received by him, from any source whatever. (*Post, pp. 564, 565.*)

5. SAME. *Illegality of tax not a defense to liability on.*

That a tax collected by a County Trustee was illegal, affords no defense to a suit upon his bond for failure to pay over the amount collected. (*Post, p. 565.*)

Code construed: § 1095 (S.); § 962 (M. & V.); § 774 (T. & S.)

Case cited and approved: McLean *v.* State, 8 Heis., 253; Chandler *v.* State, 1 Lea, 296

6. SAME. *Negligence of county not a defense.*

That the county negligently permitted a defaulting Trustee to qualify for a second term, affords the securities on his bond for the second term no defense against liability for his default during that term. (*Post, p. 566.*)

Cases cited and approved: Jones *v.* Scanland, 6 Hum., 196;. Governor *v.* Montgomery, 2 Swan, 613; McLean *v.* State, 8 Heis., 275.

7. SAME. *Not released by default on subsequent bond.*

The sureties on a Trustee's bond are not *ipso facto* released from their obligation, as a result of their principal's default for a subsequent year covered by another bond. (*Post, p. 566.*)

8. SAME. *Parties to recover school tax.*

The children of a county who are entitled to the school fund are

Anderson County v. Hays.

not necessary parties to an action on the official bond of the County Trustee for failure to account for a school tax collected by him. (*Post, p. 567.*)

Code construed: § 963 (S.): § 798 (M. & V.); § 670 (T. & S.).

Case cited and approved: Jernegan v. Gray, 14 Lea, 550.

9. COURT OF CHANCERY APPEALS. *Reports of.*

The Court of Chancery Appeals is not required to set out all the evidence upon which its conclusions are based, or to find all the separate and disconnected facts considered in arriving at a result, unless a statement of such facts is necessary to properly raise and present questions of law involved. (*Post, pp. 552, 553.*)

10. SAME. *Findings of, conclusive on appeal.*

The action of the Court of Chancery Appeals in relation to a finding of facts is conclusive, and cannot be reviewed, on appeal to this Court, but the only remedy is by rehearing before the former Court. (*Post, pp. 565, 566.*)

11. SUPREME COURT. *Construction of pleadings.*

This Court gives to the pleadings that reasonable scope and effect which it can clearly see was given to them by the Court and the parties in the lower Court. (*Post, pp. 564, 565.*)

Case cited and approved: Brandon v. Mason, 1 Lea, 615.

12. SAME. *Will not remand, when.*

This Court will not remand a cause, at the instance of the appellant, for the taking of further proof, where it appears that he had full opportunity to present the facts on the former hearing, but failed from negligence to do so. (*Post, pp. 567, 568.*)

Code construed: § 4905 (S.); § 3889 (M. & V.); § 3170 (T. & S.).

FROM ANDERSON.

Appeal from the Chancery Court of Anderson County. JOSEPH W. SNEED, Sp. Ch.

G. Mc. HENDERSON, X. Z. HICKS for Anderson County.

J. A. FOWLER, C. J. SAWYER, and LUCKY, SANDFORD & TYSON for Hays.

WILKES, J.    This is an action against defendant, Hays, and the sureties upon his several bonds as Trustee of Anderson County.   These bonds were intended to cover the County revenues and taxes for the terms 1890, 1891, 1892, and 1893, school revenue for the same terms, a special County tax for the years 1890–1891, and moneys received for the sale of railroad stock. during the year 1893.

The bill charges a deficit of over · $20,000 upon the several bonds, but that the exact amount cannot be stated, and prays for proper references and accounts, and that the liabilities of each set of sureties be ascertained, and for all proper decrees.   The several bonds were exhibited with the bill.   The sureties answered and denied that there was any default, and Hays, the principal, denied all the allegations of the bill.

An order of reference was made to the Master to report (1) the amount of County taxes due to Anderson County from the Trustee for the years 1890–1891, including interest, penalties, and costs; (2) the same for the years 1892–1893; (3) the amount of school funds due from the Trustee for 1890–1891, including interest, penalties, and costs; (4) the same for the years 1892–1893; (5) the amount due from

15 P—35

the Trustee on account of railroad stock sold; (6) whether the Trustee should be charged or credited with any other items than those shown on the book of accounts; and it was agreed that all the records of Anderson County, that either party might desire, might be read as evidence, subject to exceptions.

The Master reported as directed, taking the settlements with the Chairman of the County Court as the basis of his statements. Complainant filed no exceptions, but defendants filed quite a number, all of which were overruled, and the Master's report was confirmed and judgments were rendered, and defendant sureties appealed and assigned errors. Hays, the principal, did not appeal. The result of this account was to find the Trustee due the county as follows: For the year 1890, including interest and penalties, $8,231.53; for 1891, $1,588.70; for the term 1890–91, $9,820.28; for the year 1892, $6,061.20; for 1893, $432.34; total for term 1892–93, $6,483.54. Due for school fund for 1890, $1,901.68; 1891, $4,299.20; total for term 1890–91, $6,130.88. Overpaid in 1892, $987.56; in 1893, $822.67; total overpaid, term 1892–93, $1,810.23, which, deducted from the deficit for 1890–91, left a balance of $4,320.65. The Master reported that upon account of railroad stock nothing was due, and that all charges, credits, and calculations had been corrected in making this statement.

On appeal, the Court of Chancery Appeals treated the case as one falling under the rule as to the concurrent finding of the Master and Chancellor, and,

with the exception of some small items of additional credit allowed the sureties, affirmed the decree of the Chancellor, and the sureties have appealed to this Court and assigned errors.

The real contention first made is that the Trustee was delinquent for a previous term terminating on September 1, 1890, and that amounts collected on the taxes of 1890 were improperly applied as credits upon this default of the previous term.

As bearing upon this contention, it is said that the order of reference in the Court below was not broad enough to show the liabilities of the several sets of sureties *inter sese*, and that it should have specially directed that the liability of each set should be ascertained and reported, and that all questions as to how the liability should be distributed among the sureties was, by the order of reference, expressly reserved. The order of reference directed the account to be taken with the Trustee, and the Master was directed to report the amounts due from him by terms; and, if practicable, separately by each year. This was designed to show the liability by, the terms, and the liability of the several sets of bondsmen was thus put in issue under the terms of the reference. Defendants made no exception to the terms of the reference, and the exceptions filed by them to the Master's report show that they were fully cognizant that the purpose and scheme of the account was to show separately the liability for each term commensurate with the bonds for such term.

It is said the liability of the principal may be different from that of the sureties, and hence the account should have been to ascertain the sureties' liability, and not that of the principal. It is conceded that the liability of the surety may be different from that of the principal, still the fact remains, that the account must be stated with the principal, and not with the surety. It is the principal's default for which the surety is liable; and the surety is not liable direct to the State or county, but only through his principal. Still, in stating the account with the principal, it was proper and necessary to so shape it as to show the liability for each term separately, in order that the liabilities of the sureties, under their bonds and *inter sese*, might appear, and this was done in this case.

It is claimed that a large amount of the taxes of 1890 were misappropriated to obtaining credits upon the account of the previous term.

The Court of Chancery Appeals find that the settlements made by the Chairman of the County Court, which were made the basis of the Master's reports, purport to be for the fiscal year ending on the first of September each year, and the presumption, in the absence of proof to the contrary, is that they were properly made and they are *prima facie* correct. That Court says: "The books purport, on their face, to be settlements for the several fiscal years, and although their settlements are continued from time to time, and finally stated and closed some months

thereafter, there being nothing to show when the
payments were made, the presumption is they were
reported to the Chairman and claimed as credits for
the fiscal years for which they were allowed, and,
in the absence of proof to the contrary, the pre-
sumption would be that they were properly so al-
lowed. A settlement might well be made on Jan-
uary 3, 1890, of transactions all of which occurred
prior to September 1, 1889. Hays, the Trustee,
states that the Chairman, in stating his account for
1889, did allow him credits which ought to have
been allowed on the account for 1890. But, as said,
what amounts he thus paid out of the 1890 taxes
are not shown, nor attempted to be shown; not a
single date appears showing when the payments were
made for which credits were entered upon the settle-
ment book after August 20, 1890.''

And, again, they say in their original findings,
that while some of the warrants credited on 1889
account appear to have been issued after October 1,
1890, and hence it may be inferred they were paid
after that time, still the date of payment is not
shown, and, what is still more important, it is not
shown out of what funds they were paid, whether
those of 1889 or those of 1890, and how this was
ought to have been shown by the Trustee and sure-
ties under the order of reference to the Master.

In the case of *State* v. *Smith*, 72 Am. Dec., 206,
it was held that ''if, after an officer is properly
chargeable with money for a term, he makes a pay-

ment, it may be presumed that it was on account of the indebtedness for that term, yet it may be shown to be otherwise, and the circumstances under which it was made, may indicate the source whence the money was obtained. Still if the officer makes a misappropriation, and the money is received in good faith, such misappropriation cannot be avoided, and it will be binding on the sureties for the term during which it was collected The law will not presume that all the revenue received after the date of the last bond, was received under that bond, and appropriate it accordingly.'' While we do not feel disposed to go to the full extent laid down in this holding, that funds may be misappropriated and the surety have no remedy, yet we do hold that the surety must show the misappropriation by dates, items, and amounts, and that specific items were improperly credited, before he can raise an equity to be relieved or credited by such items.

Again, it is insisted that this case is governed by the rules laid down in *Gray* v. *State*, 95 Tenn., 317, which is in accord with *United States* v. *Irving*, 1 How. (U. S.), 250; *United States* v. *January*, 7 Cranch, 572; *Joyner* v. *United States*, 7 How. 688; *Myers* v. *State*, 1 McLean, 493.

In the Gray case it was said by this Court: '' We can see no ground upon which the sureties can be held liable for taxes which the Trustee has collected during a previous term, and for which he appears to have been delinquent when he entered upon this

last term, in September, 1892, and gave the bonds now in question. They (the sureties) are only liable for such funds as the trustee received, or should have received, after the giving of such bonds and the Trustee's induction into office thereunder, less such amounts as may have been paid out of the taxes so collected, and the accounts should have been thus stated." It is perhaps proper to say that this case does not hold, as has been assumed, that the sureties upon the second bond, where the Trustee succeeds himself, would not be liable for balances in the Trustee's hands when his first term expired, and for which he had made no default. That question was not involved, the case being one of deficit, and not of balances brought over from one term to another when there has been no default. The distinction between the two classes of cases is recognized in the case of *State* v. *Polk*, 14 Lea, 7. "When there has been no default, but a balance of actual funds brought over from one term to another, the sureties upon the bond for the latter term are liable (*Yoakley* v. *King*, 10 Lea, 67; *State* v. *Cole*, 13 Lea, 367); but when there has been a default in the previous term, the sureties upon the bond for that term are liable. *State* v. *Orr*, 12 Lea, 725; *Cox* v. *Hill*, 5 Lea, 147.

The difference between this case and the Gray case is that in the latter there was no attempt made to keep the terms separate, and show the items properly belonging to each term, while in this case

this is what was attempted, and, under the order of reference, full opportunity was afforded the Trustee and his sureties to furnish the desired data; but they failed to point out the items and give the facts, leaving the Court to grope its way by surmises and inferences, which might or might not prove correct. In the Gray case the trial Judge made no order of reference, but undertook to state the accounts from the books of the Chairman of the County Court, which it was held he might do if he saw proper; but no opportunity was given the Trustee or sureties to furnish necessary data, and the account was stated as a continuous one, without regard to the different terms and sets of sureties.

Defendants filed, in the Court of Chancery Appeals, a petition to rehear and to find additional facts along the line indicated. It is stated in the opinion of the Court of Chancery Appeals that these additional findings desired refer simply to evidential facts, which could not alter the result reached. In addition, it states that it was furnished with no data, no references to the record, and no aids whatever, and the labor required would be a useless waste of time, and burdensome on the Court, and the facts such as might have been brought out under the reference to the Master if deemed material by defendants.

The Court of Chancery Appeals cannot be required to set out all the evidence upon which they base their conclusions, nor to find all the separate and disjointed facts which they may consider in arriving

Anderson County *v.* Hays.

at a result.    Such a practice would be an intolerable
burden upon that Court and a source of confusion
and uncertainty in its findings.    It is proper for it
to state its conclusions of facts without setting out
the successive steps by which it reaches such con-
clusions, except when a statement of detached facts
is necessary to properly raise and present questions
of law that may be involved.

Upon a petition to rehear it was again insisted
that it could be made to appear that many of the
warrants credited on the account for 1889 were not
actually issued until after September 1, 1890, and
it was therefore improper to have credited them on
the account for 1889.

The important question in the case is, when were
the warrants paid, and out of what fund?    It is evi-
dent that warants issued after October, 1890, may
have been paid out of taxes of 1889 which were
delayed in their collection and disbursement.    But no
evidence was furnished the Court of Chancery Ap-
peals as to when these warrants, credited on 1889
account, were actually paid, nor out of what funds.
This was a question strongly brought out before the
Chancellor, and raised by exceptions to the report
of the Master, and it devolved upon the Trustee and
sureties to show the facts and furnish the necessary
data, as it was a matter specially in the knowledge
of the Trustee.    Having failed to do so, they cannot
now complain.    It is a mistake to assume that the
State or County must make out both sides of the

Trustee's accounts by furnishing full memoranda of dates, amounts, and other matters going to discharge the Trustee, as well as to charge him. It is quite enough for the County to show the aggregate amount chargeable to the Trustee upon the various accounts, and it is then incumbent on the Trustee to show all items of discharge which he may deem himself entitled to, and with such particularity of detail as to satisfy the Court that he is entitled to the credits claimed.

And the same rule holds good as to the sureties. They must protect themselves through their principal in the first instance, and cannot call upon the State or County to amend and supply the accounts of the Trustee, so as to show that they are entitled to credits or discharges which he has not shown. They cannot shield themselves behind the plea that the State or County has been lax in bringing the principal to a strict settlement, and they cannot rely upon the fact that it is impracticable or impossible to unwind the tangled skein of the principal's accounts, or that, having an opportunity, they have failed to do so.

It is the office of the surety to protect the State and County, not only from the dishonesty, but also the incompetency and loose methods of the principal, and it is not incumbent on the State and County to cure the defects in the manner of the execution of the trust, but only to see that the State and County suffer no loss therefrom.   The right and equity of

the Trustee and the sureties must be set up by themselves, and supported by testimony that is definite and convincing, and not by mere inferences.

It is next insisted that the sureties cannot be held liable on the bonds sued on in this case, for any amounts except the taxes collected, or which should have been collected, direct from the taxpayers. This contention is based upon the following facts: The office of County Trustee is a constitutional one. By Ch. 96, Acts 1875, the duties of the tax collector were devolved upon the Trustee, and it was provided in the twenty-third section of the Act that it should not be construed as in any way to interfere with any other duties and liabilities of the Trustee as now declared by law, it being the intent and purpose of the Act to increase the duties and liabilities as herein declared. The Act further provides that the Trustee shall, at the time he qualifies, execute the bonds as provided in § 599 of the Code of 1858, and the bonds prescribed in the school Acts for the collection of school taxes, and also such bonds as may be required of revenue collectors by the law or any ordinance of any city or town. See Shannon's compilation, § 860, Subsecs. 1, 2, 3. The § 599 referred to is that which provided for the bond originally required of the tax collector when his office was separate from that of Trustee. Previous to the passage of that Act, the Trustee had been required to give a bond conditioned "for the safe-keeping and faithful payment of all

moneys which might be deposited in his hands, agree-
able to law and the orders of the Court.'' Code
of 1858, § 426. A bond with conditions similar
to this had been required of all County Trustees
from the foundation of the State, under the Consti-
tutions of 1870, 1834, 1796, and even under the
territorial government prior to 1796.

The argument is pressed that when this Act of
1875 was passed, it was not intended to dispense
with any of the bonds then required of Trustees by
existing laws, but to require him to execute all of
them, and, in addition, the bond which theretofore
had been required of the tax collector, the latter to
cover, as it did in the case of the tax collector,
taxes received by the taxpayer, and the other bonds
to cover such revenues as previous to that time had
been covered by the regular bond of the Trustee,
and such other revenues as were covered by special
bonds—as, for example, moneys paid over by Jus-
tices under the small offense law. On the other hand,
the county insists that after that Act was passed,
it was intended that the bond required by it should
cover all taxes and revenues, and all the duties and
liabilities of the County Trustee.

The bonds required of the Trustee prior to and
at the time the ·Act of 1875 was passed, were
several. What is styled his regular bond was pre-
scribed by § 426 of the Code of 1858, before re-
ferred to. Under the Act of 1873, § 44 (Shannon,
§ 1398), he was required to give bond for the school

fund, conditioned for the faithful performance of his duties, in double the amount of the money that may come into his hands. By § 5005, Code of 1858, carried into Shannon's compilation as § 6964, he was required to give a bond to cover funds received from Justices of the Peace under the small offense law. It is insisted that all these bonds were intended still to be required of the Trustee as before the Act was passed.

ı The Code provides that "the bonds of all public officers required by law to give bond, shall, unless it is otherwise provided, be made payable to the State, with such sureties as the officer or Court required to approve the same is satisfied are sufficient, and conditioned in all cases in which a different condition is not prescribed, faithfully to discharge the duties of such office during the time he continues therein, or in the discharge of any part thereof." Code of 1858, § 761; Shannon, § 1082. And, again: "Whenever any officer required by law to give an official bond acts under a bond which is not in the penalty or conditioned as prescribed by law, or is otherwise defective, such bond is not void, but stands in the place of the official bond, subject, on its conditions being broken, to all the remedies which the person aggrieved might have maintained on the official bond of such officer, executed, approved, and filed according to law." Code of 1858, § 773; Shannon, § 1094.

It is called to our attention that after the pas-

sage of the Act of 1875, § 426 of the Code of 1858 was dropped from the statute compilations of the State. It does not appear in the compilation of 1884 by Milliken & Vertrees, nor in the compilation of 1896 by Shannon, and we are told in argument that the general custom and practice has been, since that time, not to require the bond prescribed by § 426 of the Code of 1858 of Trustees, nor the bond to cover revenue under the small offense law, but to substitute for them all, the bond prescribed by § 599 of the Code of 1858, being the usual collection bond, and which was expressly required by the Act of 1875 to be executed, and the only one that was by that Act required, at least in express terms.

The bond for county taxes given in this case is conditioned as follows: "Should the above bounden W. W. Hays truly and faithfully perform the duties of the office of County Trustee for the term of his office, and faithfully collect and pay over within the time and in the manner prescribed by law, to the proper officers designated by the laws of Tennessee to receive the same, all county taxes by him collected, or that ought to be collected, during his said term of office, then this obligation to be void," etc.

It will be seen that this bond has the terms and conditions prescribed by § 559 of the Code of 1858, and also §§ 1082 and 1398 of Shannon's compilation, but does not contain the exact provisions required by §§ 426 and 5005 of the Code of 1858, the latter being § 6964 of Shannon.

It is not denied but that one of the duties of the Trustee is to receive from County Court Clerks revenue, which, in the shape of taxes, the Clerks in the first instance have collected from the tax-payers, and also to receive from the Comptroller of the State certain school funds, and also to receive from Justices of the Peace the proceeds of fines and forfeitures which they have collected under the small offense law, and it will not perhaps be seriously questioned but that it is his duty to coerce these officers to pay over such revenues if necessary.

But the argument is that the collection of taxes is one thing and the receipt of revenues from other officers is a separate and distinct thing; that the former is covered by the provisions of the bonds in this case, and the latter is not, but is intended to be covered by the other bonds mentioned, which have not been given by the Trustee or required of him by the authorities of Anderson County; and hence the county can only look to the Trustee for these revenues, and not to the sureties on what they say is a simple collector's bond. This view is pressed upon us by a very able and well-considered argument by counsel, and we feel that the matter is one of great importance, involving large amounts of public funds and presenting questions of difficulty.

We are cited to the case of *The United States* v. *Cheeseman*, 3 Sawyer, 424–434 (4 Myers' Fed. Dec., 172), as bearing upon this question. Cheese-

man was treasurer of a branch mint at San Francisco. He gave bond under an Act passed by Congress in 1846, conditioned to "faithfully perform all other duties as fiscal agent of the government which may be imposed by this or any other Act." In 1864 an Act was passed under which the Commissioners of Internal Revenue were authorized to deliver to Cheeseman, and other assistant treasurers, revenue stamps, and a special bond was required to cover the same. It was held that the sureties upon the bond given under the Act of 1846 could not be held liable for the default of Cheeseman intended to be covered by the bond of 1864, and which he failed to give.

The case of *State* v. *Orr*, 12 Lea, 726, is also relied on. Orr was Trustee of Marshall County. The condition of his bond was that he would honestly and faithfully discharge and perform all the duties of his office, and collect and pay over to the proper officer or person all of the railroad taxes assessed, or that should be assessed for said county, within the time and in the manner prescribed by law, and honestly and faithfully discharge the duties of his office. He had been Trustee for a previous term—1876 to 1878—and gave the bond sued on in 1878. It was held that this bond covered only railroad taxes assessed and collected during the term commencing in 1878, and the sureties were not liable for taxes which he had collected in his previous term. These latter were styled by the Court rev-

enue in his hands as Trustee, and not taxes assessed and collected during the term covered by the bond. The Court held that, by the terms of the bond, the sureties were only bound for the taxes assessed and collected during its time of existence. Whether Orr was delinquent upon his first term, or had an actual balance in his hands from that term, does not definitely appear from recitals in that case, but the former condition appears to have been the status, from the reference to it in *State* v. *Polk*, 14 Lea, 7.

We are of opinion the Cheeseman case is not in point in this controversy. It was a case where a special bond was required to cover a particular fund, and the holding in that case was that the sureties on the general bond could not be held liable for the particular fund intended to be covered by a special bond, which had not been given. This fund was not in contemplation of the sureties when they went on the general bond, but they had a right to expect a special bond to cover it as the law provided. Neither is the case of *State* v. *Orr* controlling. In that case the terms of the bond expressly limited the liability of the sureties to taxes assessed and collected during the term covered by the bond, and the holding was that, under such terms and conditions, the bond did not cover taxes which had been previously collected.

Looking to the bond actually given in this case, we are of opinion its terms and conditions are broad enough to cover all the duties and liabilities of the

15 p—36

Trustee.  These terms and conditions are that the
Trustee will truly and faithfully perform the duties
of the office of County Trustee for the term of his
office; and there is then added the usual conditions
of the tax collector's bond to collect and pay over
taxes.  It being one of the duties of the office of
County Trustee to receive or collect the revenue
from Clerks, the Comptroller, balances from his pre-
decessor, and others, and account for the same as
we have already held, if he failed to do so, the
conditions of his bond are broken.  It is true that
the exact terms used in the old bond required of
Trustees by § 426, Code of 1858, are not used, to
wit, that he will "safely keep and pay over all
moneys which might be deposited or come into his
hands agreeable to law;" but all this is certainly
embraced in the broad provision for the faithful dis-
charge of duty.  As is said in *State* v. *Orr:* "From
the face of the bond it is seen that it is an obli-
gation for faithful and honest performance of the
duties of the office of Trustee, and, if no more had
been added, this would have amply covered, by our
law, all the duties devolved by law, either at the
time or by any other law passed by the Legisla-
ture during his term of office."  In that case, how-
ever, the Court held that the County Court having
added a particular obligation as to collection of rail-
road taxes, the sureties on that bond could not be
bound beyond these terms.  In other words, the gist
of that holding is that the sureties upon the bond

for railroad taxes had simply bound themselves for
these taxes for a particular term, and not for the
general funds and duties of the Trustee's office.

In the collection and handling of such railroad
tax, it was not contemplated there would be any
balance to be carried over from one term to an-
other, but it would all be paid out as collected, and
hence the sureties on the new bond would not be
bound for such balances, nor for any defaults in the
first term, those matters being covered by the bond
of the previous term, and not by the terms of
the bond sued on. *State* v. *Orr*, 12 Lea, 727,
728. But in the Act of 1875 it is expressly
provided that nothing in the Act shall be construed
as in any way to interfere with any other duties
and liabilities of the County Trustee as now declared
by law, it being the intent and purpose of the Act
to increase the duties and liabilities as therein de-
clared.

It is said the giving of the several bonds is one
of the duties of the Trustee which were not to be
interfered with by the Act; but we think duties and
liabilities, as therein referred to, are such duties and
liabilities as arise out of the execution of the trust,
and the acts of the officer while in his office, and
not to such matters as are required to qualify him
to enter upon the office.

While the bond in this case does not contain the
very words formerly prescribed for the Trustee's
bond, still its terms are broad enough to cover them

all, and under the terms of the bond, as well as under the statutes (§§ 761 , and 773 of the Code of 1858; Shannon, §§ 1082 and 1094), the sureties are liable for both revenue and taxes.

It is proper to note also that the taxes received by the Trustee direct from the taxpayers, have not been kept separate from those received from other sources in this case, but all have been mingled together, and it is not shown which funds the Trustee has paid out, and as to which the default has occurred. It may be that the entire default in this case is for taxes received direct from the tax-payer, and that other funds have been accounted for.

But it is said that recovery ought not to be had for such revenue, because not covered by the pleadings.

The bill states that "the taxes sued for embrace all county, special, school, bond, courthouse, and all other taxes and revenues due to the county for the years 1890, 1891, 1892, 1893, from said W. W. Hays, Trustee as aforesaid, whether specially mentioned or not, and a full accounting and settlement of all revenue from all sources, due the county from said Trustee, for the years mentioned, is sought for under this bill, and decrees on the several bonds for the amounts for which they are respectively liable will be prayed."

This is sufficiently broad to cover all taxes and revenues from whatever source received, or that should have been received or collected, and this was,

Anderson County *v.* Hays.

without doubt, the scope given to the pleading in the Court below by the Court and all parties, and must, therefore, be considered the one intended. *Brandon* v. *Mason*, 1 Lea, 615.

It is said there was a special tax levied in 1890 and 1891, the total, after all releases, being $4,516.20; and it is claimed that this levy was illegal. The Court of Chancery Appeals report that it does not clearly appear what this tax was for, but that it does not appear that it was charged up against the Trustee, and he was given credit for all releases claimed by him, and the weight of the evidence is that it was collected.

Under this state of fact the Trustee and his sureties are liable for it, and cannot defend on the ground that the tax was illegal. *Chandler et al.* v. *State*, 1 Lea, 296; *McLean's Case*, 8 Heis., 253; Shannon, § 1095.

It is said the Trustee overpaid his highway account for the years 1892 and 1893, and ought to have credit on his county accounts for such overpayments, and has not been so credited. It would be, perhaps, sufficient answer to this to say that the Court of Chancery Appeals do not so find the facts, but report that the highway and county tax were not kept separate, but charged together, and that the Trustee received credit in this way for any overpayments if made, which they do not concede.

It is urged before us that the Court of Chancery Appeals were laboring under a misapprehension

of the facts. This is equivalent to saying they are mistaken in their finding of facts. We are cited to the pages of the record for the testimony and statements relied on to support this contention. It must be evident at a glance that this Court cannot review the action of the Court of Chancery Appeals so far as that action relates to a finding of fact. The remedy was by a rehearing before that Court, but this was not asked for on this point, even though a petition to rehear was filed upon other grounds. We cannot entertain this assignment nor examine the record to see if it is well or improperly founded. The presumption is that it is entirely correct, and under the Act is conclusive upon us.

It is said that the sureties of the Trustee should not be held liable for default in 1890, because Hays, the Trustee, had defaulted in 1889, and the county was guilty of gross laches in allowing him to qualify as Trustee and in failing to require monthly settlements and otherwise strictly supervising his office. The Court of Chancery Appeals find that it does not appear that there was a default in 1889, and they correctly find that this defense is not available to the sureties of the Trustee, if true. *Jones* v. *Scanland,* 6 Hum., 196; *Governor* v. *Montgomery,* 2 Swan, 217; *McLean* v. *State,* 6 Heis., 275; 24 Am. & Eng. Enc. L., 883. Nor would a default for a subsequent year, *ipso facto*, release the sureties on his bond from their obligation. Substantially the same errors are assigned as to the

county taxes for 1892–93 as those we have already
passed upon, and we need not further consider them.

In regard to the school tax for 1890–91, it is
insisted, in addition, that no judgment should have
been given because the parties entitled to the school
fund, to wit, the children of Anderson County, are
not before the Court, and the Court cannot maintain
a suit for the school fund. In the case of *Jarnagin*
v. *Gay*, 14 Lea, 550, it was held contrary to this
contention. See, also, Shannon, § 963. Other assign-
ments are made as to the school fund, similar to
those already considered in regard to the county
funds, and they need not again be discussed.

Finally, we are asked to remand the cause in
order that other facts and matters may be shown.
This Court has the power, under the statute (Shan-
non, § 4905), to remand a case to the Court below
when, in its opinion, complete justice cannot be had
by reason of some defect in the record, want of
proper parties, or oversight without culpable negli-
gence. But when a party has had full opportunity
to present the facts necessary for his defense, and
has failed to do so, and has chosen to rely upon
presumptions and inferences, it does not present a
case under the statute. If it did, there would be
occasion for a remand in almost every case, as it is
easy to see, upon the final trial, where the record
might have been strengthened on the preliminary
hearing.

With the finding of the Court of Chancery Ap-

peals that the additional findings could not alter results, and the fact, apparent from the record, that ample opportunity was extended the defendant to bring out all the facts, and that they failed to do so, we do not think the case is one falling under the statute, and, believing that the merits of the case have been as fully reached as the confused condition of the Trustee's accounts will allow, we affirm the decree of the Court of Chancery Appeals.

Chief Justice Snodgrass does not concur in holding the sureties liable for the revenues received, believing that they are not covered by the bonds given