BILL BROWN *et al.*, COMPLAINANT, APPELLEE, *v.* B. C. GRAYSON, DEFENDANT, APPELLANT.*

(*Nashville,* December Term, 1929.)

Opinion filed March 1, 1930.

A. R. HALL and W. E. McCURRY, for complainant, appellee.

S. B. SMITH, for B. C. Grayson 'and JOE V. WILLIAMS, for So. Bell Teleg. Co., defendant, appellant.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

The bill herein was filed by Bill Brown, and others, for the purpose of enjoining defendant, B. C. Grayson, from prosecuting an action of forcible entry and detainer, for the possession of a 125 acre tract of land, pending before a justice of the peace, and to have the right to the possession of said tract of land determined by the chancery court.

Grayson interposed a demurrer to the bill, which was overruled by the chancellor, and an appeal allowed to this court.

We find no allegation in the bill to the effect that Brown went into possession of said tract of land as the tenant of Grayson, and hence he is not estopped to question his title. By the demurrer it is asserted that Brown has a complete remedy at law.

The bill contains this statement as to how Brown came into possession of said land, to-wit:

"In 1923 defendant Grayson came to complainant Brown and made a partnership arrangement with him to build' a house on what was called the Allen Lands of 125 acres, being the lands first above described. The partnership arrangement was that they were to build the house, that is Grayson was to furnish certain materials and Brown do the work. They were to raise chickens, hogs and fruits and have other dairy products and were to share half and half in all sales and were to be joint and equal partners in the land. No written agreement was ever drawn up for this partnership.

"Sometime in May or June, 1928, the said Grayson gave complainant notice to move off the land. That he was going to lease it to another man. Complainant then learned for the first time that W. S. Allen, Trustee, was the real owner of the land, and after being notified to remove from the land and after said partnership arrangement had been repudiated by the said Grayson and while complainant was holding possession for the said Allen, he purchased the title to the property and is now and has been ever since said purchase living on the property.

"During the partnership between complainant Brown and the said Grayson, Grayson sold and removed valuable stone from the property, timber, ties and wood and sold a right of way to the telephone company across the

same and received several hundred dollars, perhaps, as much as $1200, for which he has never accounted to your complainant or to W. S. Allen, Trustee in any amount and he is justly indebted to complainants upon an accounting which complainants charge should be had in this cause."

This is, in effect, a charge that Grayson made a parol sale of a one-half interest in said land to Brown and placed him in possession thereof, and five years later repudiated his contract. Grayson had a right to repudiate his contract, and, on these facts, recover possession in an action at law. *Beard* v. *Bricker,* 32 Tenn., 50; *Sullivan* v. *Ivey,* 34 Tenn., 487.

In forcible entry and detainer the title cannot be inquired into in an action at law. *Shultz* v. *Elliott,* 30 Tenn., 186; *William Redmond* v. *Thomas Bowles,* 37 Tenn., 551; *Phillips* v. *Sampson,* 39 Tenn., 429; *Beaty* v. *Jones,* 41 Tenn., 487; *Stockley* v. *Cissna,* 119 Tenn., 150.

The rule is different in equity. *William Redmond* v. *Thomas Bowles, supra.*

The facts in this last-named case, as stated in the opinion, are as follows:

"Redmond sold to Bowles seventy-five acres of land by parol, and delivered to him the possession. Bowles paid the consideration, but afterwards recovered it back by suit at law, upon the ground that the sale being unwritten, was void, but continued to hold the possession, and procured a superior title to that of Redmond, under which he claims the land. This bill is filed for a writ of possession on the ground that as Bowles went in under a contract with him, he cannot dispute his title, or set up one adverse to his."

This court, in dismissing the bill, said:

"The claim of the vendee, and his possession, are from the first, adverse to all others, not excepting the vendor. True, if the sale is not in writing, and the vendor has a good title, he can oust him, *because* he has the superior title, never having legally parted with it, but not on account of the particular trust or confidential relation between them. In a contract of this kind, the vendee would be allowed to confront him with any title he may have procured, ·or any good title outstanding in another. .· . .

"A purchaser, even by void contract, enters as owner to hold for himself, and acknowledges allegiance to no one. His possession, then, being for himself, he may protect it, as best he can, without regard to the manner in which he obtained it, and if he can fortify himself with the best title, he is secure. His hands are not tied by· these artificial rules, which upon sound policy are made to apply to the tenant."

Upon this, and other decisions approving it, the rule is established that in equity one may protect his possession by showing (1) that he purchased· and took possession under a voidable parol contract, and (2) that he has the superior title. This defense, under the authorities cited, is not available at law; hence it was necessary for Brown to file this bill to protect his possession. In order to prevail he will have to show (a) that he went into possession under a parol purchase, and (b) that he has a superior title to that of Grayson. If he acquired possession of the land as the tenant of Grayson, he cannot prevail even though he has the superior title.

The bill was also demurred to on the ground of multifariousness.

W. S. Allen, trustee, joined Brown in instituting this suit. They seek an accounting with Grayson for stone, wood and timber wrongfully sold from the land. As to the interest claimed by each the bill is silent. That is not very material so far as Grayson is concerned. If Grayson has a superior title to the land, then he would have to account to Brown for stone, timber, etc., sold during the partnership, provided the partnership is established. If the title was in Allen when the timber, etc., was sold, Allen would be entitled to a decree, provided he has not assigned his claim to Brown, in which event Brown should have a decree for the timber, etc. The decision as to title determines this matter. In fact, but one cause of action is stated against Grayson, viz., selling stone, timber, etc., without accounting therefor. According to the allegations of the bill he owes either Brown or Allen for same.

In Gibson's Suits in Chancery (Chambliss Ed.), section 284, it is said:

"To make a bill demurrable for multifariousness, it must contain *all* of the following characteristics:

"1. It must join two or more causes of action against two or more defendants.

"2. These two or more causes of action must have no connection or common origin, but must be separate and independent. . . .

"8. Upon the consideration of the entire bill, the multifariousness must be apparent, and the misjoinder of distinct causes of action manifest."

Applying these tests, we are unable to say that the chancellor committed error in overruling this ground of demurrer. Whether a bill should be declared multifarious is largely a matter of discretion, controlled by

consideration of the inconvenience to the parties, and the court of permitting the examination of disconnected controversies in the same litigation. *Green* v. *Officers & Directors of Trust Co.*, 133 Tenn., 609.

The decree of the chancellor is affirmed, and the cause remanded for answer and proof.