SMITH *et al. v.* STATE *ex rel.* THOMAS.

(*Jackson,* April Term, 1952.)

Opinion filed June 7, 1952.

156

Robert G. Jeter, Allen J. Strawbridge and Homer
W. Bradberry, King Webb, James M. Glasgow and Cayce

L. Pentecost, all of Dresden, for appellants.

Harper & Gallimore, of Martin, and Harry E. Jones, of Dresden, for appellees.

Mr. Justice Tomlinson delivered the opinion of the Court.

This is a suit instituted in the name of the State on the relation of the County Judge of Weakley County for the use and benefit of the State and County. Its purpose is to recover from the sureties on the official bonds of Shobe Smith, Jr., as Weakley County Court Clerk, an alleged shortage of $13,103.82. In an excellently prepared opinion, which has been of much assistance to this Court, the Chancellor overruled the separate demurrers of various defendants and allowed this appeal.

It is first insisted that the County Judge was without authority to institute this suit because it was not authorized by the Quarterly Court.

This bill shows that state auditors, pursuant to authority of Code Section 1654 et seq. audited the office of Smith, County Clerk, for the period commencing January 7,

1948 and ending December 16, 1950, together with a continuing audit commencing December 17, 1950 and ending April 27, 1951, that being the date upon which Smith resigned his office. Copies of these audits, as shown by letter attached thereto, were transmitted to the County Judge by the State Comptroller on June 5, 1951. Both audits are exhibits to the bill. The transmittal by the auditors to the State Comptroller of the first audit under date of February 27, 1951 discloses on its face that the demand of the auditors for payment of the shortage had not been met. The results of the continuing audit likewise so disclose.

The bill recites that the suit is predicated on these audits and is brought under the authority of Code Section 1657. That section provides that when a deficit in the office of a county official cannot be collected by the auditors without suit, they shall report the deficit to the County Judge and to the comptroller; that then it shall be the duty of the County Judge to institute suit for the collection of the shortage within ninety days after he receives the report.

█ Therefore, this bill shows on its face that the County Judge did have the authority to institute this suit by virtue of Code Section 1657 without any authorizing resolution of the Quarterly Court unless it be, as insisted by appellants, that his alleged failure to institute the suit within ninety days after the auditors' report deprived him of that authority.

█ In the letter of the auditors to the comptroller under date of February 27, 1951 transmitting to him the first audit showing the shortage to be $14,530.08, it is stated that the deficit had not been reported to the County Judge because he "was not in Weakley County at the time the audit was completed". It was by letter

of June 5, 1951 that the comptroller transmitted to the County Judge the two audits disclosing the alleged shortage. The word "report" referred to in Code Section 1657 as being the report upon which the County Judge shall institute suit within ninety days is a word that necessarily means the "audit" of the auditors. It is upon that audit that the suit is to be based. Since suit was instituted on August 17, 1951 after receipt of the audit on June 5, 1951, it follows that it was instituted within ninety days after receipt.

██ Morever, the duty of the County Judge to file this bill does not end with the expiration of ninety days from the receipt of the report of the deficit. It was only intended by Code Section 1657 to also authorize, not require, the comptroller to bring the suit after the ninety day period had expired, if the County Judge failed or refused to do so. The duty of the County Judge to file the suit continued until the comptroller exercised the above-mentioned authority. The letter, spirit and purpose of Code Section 1657 can admit, we think, of no other construction. Its purpose was to procure the bringing of the suit, county politics notwithstanding.

██ By pleas in abatement, and subsequently by demurrers, the County Judge was called upon to show his authority for the institution of this suit, and his counsel of record to show their authority for appearing. These pleas were overruled without requiring any response thereto, and the demurrer to that effect thereafter overruled. It is insisted that the failure of the Chancellor to require a response to the pleas, as well as his action in overruling the pleas and the demurrer, were errors.

The bill in this case was signed and sworn to by the County Judge. That bill disclosed the suit to have been instituted in accordance with and under the authority

of Code Section 1657 and that the counsel filing the bill had been selected by the County Judge pursuant to the express authority given by that code section. The answer to the pleas was contained in the sworn bill filed on relation of the County Judge and by him signed, and to which he made oath. It would have been surplusage to have required an answer to the plea repeating the same statements. There was no error in the Chancellor's action with respect to these matters.

It is next insisted that the comptroller should have been made a party complainant because the State has an interest in the funds sought to be recovered.

Code Section 1657 directs the County Judge to bring this suit. This section does not otherwise prescribe the manner of its bringing. Since this suit was brought by the County Judge in the name of the State for the benefit of the State and County, this seems to be sufficient. Compare *State ex rel.* v. *Abernathy,* 159 Tenn. 175, 183, 17 S. W. (2d) 17. In this connection, attention is called to the fact that the comptroller is given no authority to act under Code Section 1657 unless the County Judge has failed or refused to perform his duty under that code section. Implicit in this is a manifestation that the Legislature did not intend for the Comptroller to be a necessary complainant, when the County Judge brought the suit under this code section.

Next it is insisted that the bill is multifarious in that it makes party defendants to the suit (1) persons who were sureties on the official bonds of Smith clerk for the term commencing September 1, 1946 and ending four years thereafter, and (2) other persons who were sureties on this Clerk's bonds for his second term beginning September 1, 1950.

The original audit and the continuing audit does not specify what amount of the alleged shortage occurred during the first term of this clerk, or what amount thereof occurred during the period he occupied the office in his second term. These audits do show the total amount of the alleged shortage.

Three of the defendants who were sureties on the bonds for the first term were sureties on the bonds for the second term. As to this particular situation, the case of *Governor* v. *McEwen*, 24 Tenn. 241, 263 is directly in point, and contrary to the insistence of these appellants. There the Court said:

"But it is contended, in the second place, that the bill is multifarious. In what does this consist? The plaintiffs have a common claim against R. H. McEwen and six of the other defendants, as to both bonds, and as to the whole time covered by account sought, and as to every particular thereof; and, as to the two additional sureties in the second bond, the claim, although circumscribed in time and amount, is identical in character with that affecting the others, involving questions of charge and discharge of the same nature and description. This doctrine of multifariousness, in each particular instance, peculiarly refers itself to the sound legal discretion of the court, to be guided by the analogies of the decided cases, the principle of which, however, is the attainment of justice, by means the most convenient and least embarrassing. To have one bill against McEwen and six of the defendants, and another bill against said McEwen and those six with two others, would promote neither justice nor convenience; because, if the latter two defendants had not a right, as

parties, to examine and superintend the taking of the first account, the interest of the six would be to throw as much as possible of the responsibility, properly falling within the first period, so the one account is susceptible of being not only more conveniently, but more justly, taken. We can not, therefore, hold this bill to be multifarious.''

Moreover, the claim against the two sets of sureties, in so far as they are different persons, have a common origin and the face of the bill does not make it manifest that there is a misjoinder. For that additional reason it is not demurrable for multifariousness. *Brown* v. *Grayson,* 160 Tenn. 374, 379, 24 S. W. (2d) 894.

Again, those sureties on the bonds for the second term who were not sureties on the bonds for the first term are recipients of benefits in the manner contemplated by equity by the joining with them as defendants the persons who were sureties on the bonds during the clerk's first term. This is because of the fact that when an officer serves successive terms with different sureties, those on his bond for the last term are prima facie responsible for the entire shortage. *Burns* v. *City of Nashville,* 142 Tenn. 541, 612, 613, 221 S. W. 828. Since this presumption is rebuttable, it gives sureties on the second set of bonds an opportunity to shift from themselves to the sureties on the first set of bonds liability for deficits which may by proof be shown to have occurred during the first term.

Nor can the sureties on the bonds executed for the first term properly complain at being made parties to the suit with the sureties on the bonds for the second term, all to the end that an opportunity for the doing of equity between all sureties may be afforded. Such a course was expressly approved in *Anderson County* v. *Hays,* 99

Tenn. 542, 548, 42 S. W. 266, 268, wherein the Court said that the making of them parties of the suit is proper in order that under any applied for order of reference as to the liability for each term separately "the liabilities of the sureties under their bonds, and inter sese, might appear, * * *".

Further, viewing the matter from the standpoint of the State and County, it is conceivable that notwithstanding prima facie liability of the sureties on the second series of bonds, the State might not be able to actually collect the money from these sureties. In such a situation, it would be desirable for complainant to show the liability of the sureties on the first set of bonds in order to be the better able to actually collect all adjudged to be due. By joining all in one suit multiplicity of suits is avoided.

Also, it is insisted that the demurrers should have been sustained because the bill does not show (1) what amount of the alleged shortage is due the State and what amount thereof is due the County; and (2) what amount of the deficit occurred during the first term, and what amount thereof occurred during the second term; and (3) the failure to specify the amount of shortage during each of the two terms deprived the sureties of paying what they owed without suit so as to avoid the payment of interest and penalties, etc.; and (4) that demand was never made on the County Court Clerk for payment of the alleged shortage; and because the bill (5) shows that no audit was made from January 7, 1948 until December 16, 1950, thereby allegedly violating Code Section 255.77(5) to make an annual audit of the office of county officials. See also Code Supplement Section 1654; (6) because (a) the original bonds and (b) the original audits were not filed nor were the copies sworn to; (7) no demand for

payment was made on the bondsmen. These insistences will be considered in the order stated.

As to insistence (1), it is no concern of the sureties as to how much of the shortage, if any, is due the State and County, respectively. Their duty is to pay the amount of their principal's default. Compare *Anderson County* v. *Hays,* 99 Tenn. 542, 548, 42 S. W. 266.

As to insistence (2), the amount of the deficit occurring during the first term as distinguished from that occurring during the second term is a matter which, in so far as necessary, may be developed by the proof. It is not fatal to a bill that this breakdown be not alleged.

As to insistences (3), (4) and (7), there is nothing in Code Section 1657 which requires the auditors to make demand on the sureties for payment of the shortage. Compliance with the statute is had by making demand upon their principal. It was not contemplated by this code section that these auditors should look up these many sureties and make demand of them. The letter of transmittal of the first audit to the comptroller disclosed that request for the payment of the deficit had been made. In the absence of a contrary showing the presumption is that the demand was made upon the principal. Code Section 1657 does not require that the County Judge make demand upon any one before instituting suit. However, the bill does show that he gave the sureties notice of the alleged shortage by letter of July 25, 1951, prior to the filing of the bill on August 17, 1951.

As to insistence (5), the requirement of Code Sections 1654 and 255.77(5) is a requirement for the benefit of the State and County, not for the benefit of the defaulting principal and his sureties.

As to the insistences (6) (a) and (b), there is

no requirement, in so far as we know, that the original bonds or original audits must be filed as exhibits to the original bill or that copies be verified by oath in order to enable complainant's bill to withstand demurrer. There is oath to the bill to which these copies are made exhibits. In so far as it may ever be necessary to produce originals, such may be produced in proper course during the hearing.

As a matter of fact, the bill shows that the audits made exhibits thereto were copies of the original. See the attached official communication of the comptroller to the County Judge. Copies of all bonds upon which recovery is sought were· filed as exhibits to the bill. These bonds were certified to by the Register of Weakley County with the exception of Exhibit D, which was not certified to by the Register for some reason not appearing of record, and as to which no point is made by the appellants. Code Supplement 1839.3 provides that bonds of county officials shall be recorded in the register's office.

While that hereinbefore said does dispose of every insistence made by appellants, it is further appropriate to call appellants' attention to the fact that Courts do not look with favor upon technical objections interposed by sureties sued on bonds which they executed for their principal, who as a public official has allegedly misappropriated state and county funds collected by him as such official. The contract of the sureties on the bonds is to pay such shortages, to the extent of the bonds they executed.

Let the decree be affirmed with all costs of appeal adjudged against appellants and the sureties on their appeal bond and the cause remanded for further proceedings.