HAMBY et al. v. NORTHCUT et al.—149 S. W. (2d) 484.

Middle Section.  October 12, 1940.

Petition for rehearing dismissed, December 21, 1940.

Petition for Certiorari denied by Supreme Court, March 9, 1941.

12

John A. Chumbley, of Manchester, for appellants.
Jeff D. Fults, of Tracy City, for appellees.

FAW, P. J. The complainants' bill was dismissed, and all the costs of the cause adjudged against the complainants, by the final decree of the Chancery Court in this cause. The complainants prayed an appeal to this court, which was granted "upon complainants giving appeal bond or taking the pauper's oath," and complainants were allowed thirty days from the filing of the decree for entry in which to file bond or take the oath.

At the foot of the decree, there is a notation as follows:

"C. & M. Enter.

"T. L. Stewart, Chancellor."

And below the chancellor's signature as above indicated, the following appears:

".P. S. In the event of an appeal, J. R. Hamby, a non-resident of the State of Tennessee, will have to make bond for costs as I understand the law, and I will insist on this being done.

"J.D.F."

Manifestly the last-quoted notation was intended by defendants' solicitor as an objection to the allowance of an appeal to J. R. Hamby (one of the appealing complainants) on the pauper's oath; but whether or not such objection was called to the attention of the chancellor does not appear.

Neither of the complainants filed an appeal bond; but all of them, including J. R. Hamby, filed the oath prescribed for poor persons within the period of thirty days from the entry of the decree.

Before the case was reached and called for hearing on the docket of this court, the defendants filed a written motion to dismiss the appeal of J. R. Hamby on the ground that the record discloses that he is a non-resident of the State of Tennessee and a resident of the State of Illinois, and therefore not entitled to prosecute an appeal on the pauper's oath.

At the hearing, this court reserved its ruling upon the aforesaid motion, without prejudice to the rights of the respective parties thereunder, and the cause was argued orally by counsel at the bar and submitted to the court upon the transcript of the record, assignments of error by appellants, and briefs and arguments, both oral and written, by counsel for the parties, respectively.

14

■ The aforesaid motion to dismiss the appeal of J. R. Hamby must be, and it is, sustained, for the reason that it appears from the deposition of said J. R. Hamby that, at the time his deposition was taken in this cause on November 6, 1937, his home was then in the State of Illinois, and that he had been a non-resident of the State of Tennessee since the year of 1903, and neither in his "Pauper's oath for appeal" nor elsewhere in the record, does it appear that since his aforesaid deposition was taken he has become a resident of the State of Tennessee.

Only a resident of this State may prosecute a suit or an appeal upon the pauper's oath. Code, section 9080; Southern Railway Co. v. Thompson, 109 Tenn., 343, 71 S. W., 820; Goodlin v. Hutson, 16 Tenn. App., 488, 491, 65 S. W. (2d) 217; Scruggs v. Baugh, 3 Tenn. App., 256, 259.

■ ■ There were ten persons named as complainants in the bill in this case, all of whom prayed an appeal, and the decree granting their appeal, "upon complainants giving an appeal bond or taking the pauper's oath," will be construed as granting the right to appeal on the pauper's oath only to such of the complainants as were lawfully entitled to thus prosecute an appeal; for if otherwise construed, the granting of an appeal to a nonresident would have been coram non judice. The chancellor was without power to grant to a nonresident of this State the right to appeal on the pauper's oath.

■ In the light of the record facts before stated, the pauper's oath filed by J. R. Hamby was a nullity, and his appeal was not perfected. After the expiration of the thirty days, the cause, in so far as J. R. Hamby was concerned, stood in the same plight and condition as if no appeal by him had been prayed or granted. England v. Young, 155 Tenn., 506, 513, 296 S. W., 14. The appeal of J. R. Hamby is dismissed.

Although the dismissal of J. R. Hamby's appeal precludes us from a review of the decree below in so far as it dismissed his suit, it may be observed that the allegations of complainants' bill show that J. R. Hamby was not entitled to a recovery. It appears from the bill that the persons named as complainants therein are Mary Hamby and J. R. Hamby and their eight children (all of whom are adults). The complainants sue in ejectment, upon allegations of superior title, to obtain possession of a tract of 437½ acres of land in Grundy County, Tennessee, and to recover a judgment for waste, rents and profits while said land was in the possession of defendants. The bill contains, among others, allegations as follows:

"The complainant, Mary Hamby is the widow of J. R. Hamby, having been decreed a divorce, by the Honorable Court on the ―― day of ――, 1928, and this Honorable Court was pleased to decree to the said Mary Hamby, a life estate in all the above described property, as alimony, and the remainder to all the above named chil-

dren of J. R. Hamby and Mary Hamby, and they are tenants in common of the above tract of land.

"J. R. Hamby, left Tennessee a number of years ago, and at no time has he ever disposed of said tract of land, since it was deeded to him by his father. He joins as complainant for whatever purpose necessary to show that the title was in him until the divorce was rendered in this Honorable Court."

Obviously the above-quoted statement of the bill is, in effect, an allegation that J. R. Hamby has no title to or interest in the subject-matter of this suit.

Prefatory to the disposition of the issues of fact and law arising on the record for decision by this court, we will make a statement of the substance of the pleadings, and of certain salient facts disclosed by the record.

The complainants' bill was filed on February 23, 1937, and complainants allege therein that "they" are the owners, in fee, of a tract of land which the complainant J. R. Hamby received, in fee, from his father and mother, Wash Hamby and wife Arkansas Hamby, the consideration being "love and affection for their son;" that the deed is dated February 3, 1883, and recorded in Book "G," page 143, of the Register's Office of Grundy County, Tennessee, for 437½ acres, described as follows: (then follows a description, by metes and bounds, of the tract of land in controversy "containing 437½ acres, more or less," and this is followed in the bill by the allegations which we have hereinbefore quoted with respect to the decree divorcing Mary Hamby and J. R. Hamby, the divestiture of title out of J. R. Hamby, and the purpose of J. R. Hamby's joinder in the suit).

The remaining allegations of the bill are as follows:

"Complainants would further show the court that notwithstanding their ownership, and ever since February 3, 1883, they have been entitled to the benefit, possession, use and enjoyment of said land and the profits and fruits thereof, the defendants have made some kind of claim to said land, and in 1933 they sold the timber off said land and appropriated the money derived from said sale of timber to their own use, the defendants cut and sold the valuable timber off of said land, and complainants are informed by defendants that they received $10.00 per acre for the timber, but complainants aver, and will show to this honorable court, that the timber on this land was worth more than $10.00 per acre, that defendants equalized (realized) this amount, and is informed that they received the sum of $10,00 per acre for a tract of more than 1400 acres, of which this 437½ acres was a part of the 1400 acres sold by defendants. The cutting and destruction of the valuable timber was and is an irreparable injury to the said land.

"Complainant J. R. Hamby and Mary Hamby would show the Court that they have no education, cannot sign their name, neither

read nor write, that they have no means whatsoever, the only property they had was what the father of J. R. Hamby deeded to him, or left him, or left him at the time of his death. The complainants, who are the children, are in dire financial circumstances, very little education, and are forced to live on the part of land deeded to J. R. Hamby, which land is poor for agricultural purposes, and the only value they have was in the timber land, of which defendants have appropriated to their use.''

After the usual prayer for process and waiver of answer on oath, the complainants pray that the title to said land be decreed to them, and that they be put in possession thereof; that an account be taken to ascertain the value of the rents and profits, the timber cut, and the amount of waste and damage committed on said land by defendants, and that complainants have a decree against the defendants therefor; ''that any deed that defendants might claim for said land be set aside, and declared null and void, and a cloud on complainants' title, and removed as such, and that the defendants be perpetually enjoined from setting up any claim, or doing any acts whatsoever, under or by virtue of said deed or paper writing;'' and complainants pray that they be given such other and further relief as they may be entitled to at the hearing.

The defendants named in the original bill were J. H. Northcut and Tom (T. B.) Northcut, and it was subsequently agreed that Fannie Moffitt might be made a party and considered as such in this case.

The answer to complainants' bill filed by J. H. Northcut and Tom Northcut on April 17, 1937, sets up, among others, certain defenses which, to avail the defendants, it was necessary for them to plead; and (omitting the formal caption) we will quote from their answer as follows:

''These respondents deny that the complainants are the owners of the land described in the bill, or that they have any interest whatever in said land. They admit that J. R. Hamby was at one time the owner of said land, his father and mother having deeded same to him and said deed was made in the early eighties and is of record in the register's office at Altamont, Tennessee. That this was a gift and soon afterward the said J. R. Hamby conveyed this land to his brother E. W. Hamby and on December 8, 1892, W. E. Hamby and wife, Allie Hamby, conveyed to Sam Brown a tract of land containing 993 acres which included the land described in complainant's bill, and on Oct. 25, 1909, the said Sam Brown conveyed to H. B. Northcut all of the said 993 acre tract lying on the sides and top of the mountain but not including any of the valley land or farm on which said Brown lived. That said H. B. Northcut died many years ago seized and possessed of said land in fee simple and the title thereto descended to his three children T. B. Northcut, Mrs. Tim Moffitt, and J. H. North-

cut, and at the death of Mrs. Tim Moffitt several years ago her interest in said land descended to her daughter, Miss Fannie Moffitt.

"That your respondents and those under whom they claim title have had the open, notorious, exclusive and adverse possession of said land under registered assurances of title purporting to convey the fee for more than seven years next before the filing of the bill in this case, and they plead and rely on the Statute of Limitations of seven years as a complete bar to complainant's suit, said possessions consisting of buildings and enclosed fields which were cultivated year by year.

"Respondents admit that Mary Hamby is the divorced wife of J. R. Hamby and that she obtained a divorce from said J. R. Hamby in 1928, but they do not admit that said divorce was legally obtained, and if it was the attempt to divest the title to said land out of the said J. R. Hamby and vest same in Mary Hamby by decree in said cause was and is a mere nullity since J. R. Hamby had no title to said land and no interest of any kind therein at the time of said decree, nor had he had since he had conveyed all his right, title, and interest in and to said land to his brother, E. W. Hamby, some time in the eighties, and this fact was well known to the said Mary Hamby when she took said decree and hence said decree was fraudulently obtained and constituted a fraud upon the court. That while something is said about the children of J. R. Hamby and Mary Hamby having the remainder of the interest in said land, yet said decree, if it had any force or effect, puts the fee simple title in Mary Hamby, and hence the children of said J. R. Hamby and Mary Hamby have no interest in said land and are improperly made parties to this suit. This is true if J. R. Hamby had been the owner of said land at the time his wife obtained a divorce from him and certainly is true as to all the complainants, since J. R. Hamby had parted with his title many years before said decree was made and entered. It is true that J. R. Hamby left Tennessee a number of years ago, but it is not true that at no time has he ever disposed of said tract of land, and his joining in this suit, if in fact he gave his consent so to do, is done for the sole purpose and intent to assist the other complainants in their fraud scheme to take this land away from the true owners thereof. This must be patent to the casual observer, since it is alleged that Mary Hamby obtained this land as alimony when she procured a divorce from J. R. Hamby.

"Respondents admit that they sold the timber off of this land which they purchased from Sam Brown, which included the timber on the land claimed by complainant; that they did this because they had the title to the land and timber and therefore had the legal right to sell it and to receive the money for it, which they did, and the sale and removal of said timber from said land in no way concerned complainants, nor were they injured thereby.

"Respondents admit that Mary Hamby and her children have no education to speak of, and this may be true of J. R. Hamby, but this fact did not warrant them in undertaking to set up title to property they knew they did not own, and while Mary Hamby and children are poor, yet this fact did not justify them in trying to mislead the court with reference to the farm they own and on which they live, consisting of some thirty or forty acres, more or less, of valley land.

"That respondents' land begins on the cedar stump at or near the foot of the mountain and runs north 390 poles to a white oak; thence west 560 poles to a grassy pond; thence south 390 poles; thence east 160 poles to a rock marked B N, the initials for Brown and Northcut; thence north, east and south around with the foot of the mountain, so as to not take in any of the farm land, back to the beginning; and respondents will file their deed and the deeds of their predecessors in title as proof in this cause and to show the true boundaries of their said land, on or before the hearing of this cause.

"Respondents would now show the court that in the year 1931 or 1932 respondents J. H. and T. B. Northcut filed an original injunction bill against Mary Hamby et al., in the Chancery Court of Altamont, Grundy County, Tennessee, setting up title to the identical tract of land described in the deed from Sam Brown to H. B. Northcut, which includes the land described in complainants' bill in this cause, obtained an injunction restraining and inhibiting the defendants from trespassing on said land and cutting and removing the timber therefrom, and asking in the prayer of said bill that said injunction be made perpetual on the final hearing; that process was issued in said cause and served on the defendants, including defendant Mary Hamby, requiring them to appear and answer said bill at a stated time; that they failed and refused to make defense to said suit; that a pro confesso was entered against them, followed by a final decree adjudging that respondents, J. H. and T. B. Northcutt, were the owners of said land, and any claim that the defendants had was removed as a cloud upon complainant's title and the injunction was made perpetual against said defendants in said cause, all of which will more fully and at large appear from the record and decree in said cause which are here referred to and will be used and read as evidence on the trial of this cause, and respondents plead and rely on said former adjudication as a complete bar to this suit, since said suit was tried on its merits, as will more fully and at large appear from the record in said cause.

"That complainants have no possession on the land described in the bill, and knowing of the sale of said land to E. W. Hamby and the long continuous possession of said land by houses and enclosed fences by said E. W. Hamby and Sam Brown and the possession by respondents and the cutting and removing of timber by them for years, all of which acts were well known to complainants and acquiesced in

by them, they are now estopped to deny the title of respondents to said land, and your respondents plead and rely on the doctrine of equitable estoppel as a complete bar to complainants' rights to recover in this suit.

"All other matters in said bill contained not herein before admitted or denied or (are) here and now generally denied."

A considerable volume of proof, by depositions of witnesses and exhibits thereto, was taken and filed on behalf of both parties, respectively, and the cause was heard below on May 10, 1939, upon the pleadings and proof, together with certain stipulations of the parties, through their solicitors of record, and the chancellor held the case under advisement until June 20, 1939, when he filed a written opinion wherein he stated his findings of facts and conclusions of law, and thereafter, on August 11, 1939, the final decree of the court below was entered, which decree contained a recital of the material facts found by the chancellor, and his adjudication that, upon the facts thus found, the complainants were not entitled to relief, and their bill should be dismissed at their cost; and it was accordingly so decreed.

The chancellor's findings set forth in his decree are as follows:

First: Sam Brown purchased the land in controversy, including an adjoining tract, both tracts being included in one general boundary, from E. W. Hamby and wife, Allie Hamby, by deed dated December 8, 1892, and recorded in the Register's Office of Grundy County, at Altamont, Tennessee, on October 2, 1894, and said Brown went into the possession of said land and had open, notorious, exclusive, continuous and adverse possessions upon said land, under registered assurance of title purporting to convey the fee, for more than seven years, and thus perfected his title to the extent of his boundary. Said Brown maintained possessions by houses, barns, and fenced and cultivated fields, on the tract of land in controversy, and also the adjoining tract included in his said deed, for more than seven years, and cut and removed the timber from said land and carried it to market by defendants' home, and no objection was made by the defendants.

Second: The defendants derived their title from said Brown and wife by deed dated October 25, 1909, covering and conveying the same land sued for, together with an adjacent tract, both included in one boundary, said deed having been placed of record in the Register's Office of Grundy County on November 1, 1909, and as the deed from E. W. Hamby and wife, Arkansas Hamby, covered and included the land in question, together with adjacent land describing the same as one tract, possession thereunder for more than seven years under our statute extends to the boundaries of the land described in said deed and perfects title thereto.

Third: J. R. Hamby could not recover because whatever title he may have had to said land was divested out of him and vested in

Mary Hamby and her heirs by decree of the Chancery Court of Grundy County in a divorce proceeding in 1928, and said decree is binding on him, and cannot be set aside in a collateral attack such as attempted in this case.

Fourth: Mary Hamby cannot recover for the reason that she was a defendant in an action brought in the Chancery Court at Altamont, Tennessee, in 1931, by Jas. H. and T. B. Northcut, defendants herein, claiming title to the same land described in the deed from Sam Brown and wife to H. B. Northcut and Sons, the defendants herein being the heirs at law of H. B. Northcut, and the same land sued for herein, together with adjacent land, being in controversy, and a decree was obtained against Mary Hamby and others on pro confesso in said suit, thus removing any claim that she may have had to said land as a cloud upon Northcut's title, which decree constitutes res adjudicata against said Mary Hamby.

Fifth: The complainants have not deraigned title (from the State), and "there is no legal proof in the record that the complainants and the defendants claim from a common source."

(Although they are not designated by numbers in the chancellor's decree, we have numbered the several findings of the chancellor from one to five, both inclusive, in order to have herein a convenient means of reference thereto, and thus avoid repetition.)

By far the larger part of the evidence in the record was directed to the issues which the chancellor resolved adversely to the complainants in his first and second findings above set forth. After an examination and attentive consideration of this evidence, we are of the opinion that said first and second findings of the chancellor are supported by the greater weight of the proof, and we concur therein.

We do not deem it necessary or important that we should further extend this written opinion by a discussion of the voluminous evidence directed to the issues decided by the chancellor in his first and second findings, for two reasons, viz: (a) the statute, section 10620 of the Code, requiring this court to make written findings of facts, contemplates that the court shall find only the ultimate, determinative facts upon which its conclusions of law are predicated, and not mere matters of evidence, nor all the separate and disjointed facts which it may consider in arriving at the result. (Anderson County v. Hays, 99 Tenn., 542, 552, 42 S. W., 266; Badger v. Boyd, 16 Tenn. App., 629, 645, 65 S. W. (2d), 601; Julian v. American National Bank, 21 Tenn. App., 137, 163, 106 S. W. (2d) 871; Melody v. Hamblin, 21 Tenn. App., 687, 704, 115 S. W. (2d), 237; Gregory v. Merchants State Bank, 23 Tenn. App., 567, 579, 135 S. W. (2d) 465; Higgins v. Lewis, 23 Tenn. App., 648, 662, 137 S. W. (2d) 308); and (b) the complainants must be denied a recovery in this cause because of other findings (to which more particular reference will be hereinafter made), without regard to the first and second findings, supra.

The third finding of the chancellor, supra, involves the question as to whether the eight complainants who are children of J. R. Hamby and Mary Hamby, are entitled to maintain this suit; or, to be more specific, the primary question at this point is, whether the children of J. R. Hamby and Mary Hamby have at any time had an interest or estate as remaindermen in the land in controversy. The answer to this question depends solely upon the record disclosures with respect to the terms of the decree in the aforesaid "divorce proceeding in 1928."

As hereinbefore shown, the complainants alleged in their bill that, in said divorce suit, the court decreed to Mary Hamby, as alimony, a life estate in the land in controversy, "and the remainder to all the above-named children of J. R. Hamby and Mary Hamby."

Responding, in their answer, to the last above-mentioned allegations of the bill, the defendants (after asserting that "if it was the attempt to divest the title to said land out of the said J. R. Hamby and vest same in Mary Hamby by decree in said cause, (it) was and is a mere nullity, since J. R. Hamby had no title to said land and no interest of any kind therein at the time of said decree") stated that "said decree, if it had any force or effect, puts the fee-simple title in Mary Hamby, and hence the children of said J. R. Hamby and Mary Hamby have no interest in said land and are improperly made parties to this suit."

It is seen that, in the pleadings, there was a direct issue between the complainants and defendants as to whether or not the decree in the aforesaid divorce suit purported to vest a life estate in Mary Hamby with remainder to her children, or to vest in Mary Hamby the absolute fee, without limitation over. Neither the decree nor any other part of the record in said divorce suit was introduced in evidence in the instant case. The proof upon which this issue must be determined is found in the deposition of said J. R. Hamby, and a stipulation of counsel for both parties which was inserted in said deposition in the course of the cross-examination, as follows:

"Q.-144. Just what interest are you claiming in this land, Mr. Hamby, in this 437½ acre tract? A. I claim it all.

"Q.-145. Don't you know that your wife, Mary Hamby, filed a divorce suit against you some ten years or more ago, and took a decree for a divorce, and also a decree for this land as alimony? A. That was for the valley land.

"Q.-146. I here show you what purports to be a certified copy of the decree in the case of Mary Hamby against J. R. Hamby, rule No. 1255, in the Chancery Court at Altamont, Tennessee, tried on the 12th day of November, 1928, before Chancellor T. L. Stewart: Upon the bill of complainant, Mary Hamby, the pro confesso heretofore entered against the defendant J. R. Hamby, and the oral testimony of witnesses examined in open court, and then I will read the first

tract of land set out in this decree as a part of the alimony as follows: (Here reads). Now, doesn't the description properly describe this 437½ acre tract? A. Did the Court make her a deed to that?

"Q-147. Please answer the question. A. That describes that tract of land.

"It is here agreed that Mary Hamby obtained a decree in the Chancery Court at Altamont against J. R. Hamby on the 12th day of November, 1928, and that the 437½ acre tract of land was decreed to her as a part of alimony in said proceeding, but the said J. R. Hamby now contends that he is not bound by said decree, and it will not be necessary for the defendant to file a certified copy of the technical record in divorce proceeding.

"This December 5, 1938.

"Signed: John A. Chumbley,
"Sol. for Complainants
"Jeff D. Fults,
"Sol. for Defendants.

"Q-148. Have you ever taken any steps to set this divorce decree aside? A. No, sir."

It is seen that the parties waived the production of the record of the divorce suit, and agreed that, in that case, the 437½-acre tract of land in dispute was decreed to "Mary Hamby" as a part of her alimony. There is no proof, and no suggestion in the stipulation, that the divorce decree purported to vest a life estate only in Mary Hamby, with remainder to the children of J. R. Hamby and Mary Hamby, as alleged in complainants' bill.

■ In case of a divorce a vinculo, procured at the suit of the wife, the court may vest in the wife absolutely a specific portion of the real or personal estate of the husband. Code, secs. 8446, 8447; Chenault v. Chenault, 5 Sneed, 248, 251; White v. Bates, 89 Tenn., 570, 573, 15 S. W., 651; Edwards v. Edwards, 8 Tenn. Civ. App., 482.

■ In the present collateral proceeding all presumptions are favorable to the validity of said divorce decree, and the parties thereto, Mary Hamby and J. R. Hamby, are bound thereby, and will not be heard to question its efficacy to divest and vest title according to its terms. Finch v. Frymire (Tenn. Ch. App.), 36 S. W., 883; Savage v. Savage, 4 Tenn. App., 277, 282.

■ In Tennessee, the vestiture of title "in Mary Hamby," as stated in the stipulation hereinbefore quoted, and the vestiture of title "in Mary Hamby and her heirs," as stated in the third finding of the chancellor, supra, would be, in legal effect, precisely the same; and either would purport to vest in Mary Hamby an absolute title in fee.

"The terms 'heirs,' or other words of inheritance, shall not be requisite to create or convey an estate in fee." Code, section 7597, Shan.

Code, section 3672. See, also, Code, section 7607, Shan. Code, section 3680.

■ "The word heirs is a technical word, and is always construed to be a word of limitation and not of purchase, unless there be other controlling words, clearly showing that a contrary meaning was intended by its use." Kay v. Connor, 8 Humph., 624, 633, 49 Am. Dec., 690; Graves v. Graves, 3 Tenn. App., 439, 442.

"The statute, section 3672 [now Code, Section 7597], did not change the effect of the use of words of inheritance, but merely provided that they were not necessary to create an estate in fee." Graves v. Graves, supra, 3 Tenn. App., 442.

■ According to the aforesaid stipulation of counsel for the parties, the divorce decree did not purport to vest in the children of J. R. Hamby and Mary Hamby any title to, or estate or interest in, the land in dispute, and they do not claim title otherwise; hence the chancellor properly dismissed their suit.

■ The fourth finding of the chancellor, supra, upon which he held that former adjudication in a suit in the Chancery Court at Altamont in 1931, wherein Mary Hamby was before the court as a defendant, "constitutes res judicata" against said Mary Hamby, complainant herein, is well supported by the proof, including a transcript of the decree in the former suit placed in evidence by agreement. The present record discloses no claim of title in complainant Mary Hamby which would not have been equally available to her on the trial of the former suit, and said former adjudication conclusively. precludes a recovery by her in the instant case. 9 R. C. L., pages 925-927, par. 95.

It is, in substance, asserted by the appellants, through five assignments of error (numbered one, two, three, four and seven), that the aforesaid first, second, third and fourth findings of the chancellor, and his decree based thereon, were, and are, erroneous, and should be reversed. For the reasons hereinbefore stated, the five assignments of error above mentioned are overruled.

■ This leaves for disposition the appellants' fifth and sixth assignments of error. The fifth assignment is that the chancellor erred in holding that "the record does not disclose how said E. W. Hamby acquired title to the land so conveyed to Brown;" and the sixth assignment is that the chancellor erred in holding that "there is no legal proof in the record that complainants and defendants claim from a common source."

In his written opinion of May 10, 1939, the chancellor said that "the record does not disclose how said E. W. Hamby acquired title to the land so conveyed to Brown," and that "there is no legal proof in the record that complainants and defendants claim from a common source." In his final decree (after the recital of other findings which, the chancellor held, would preclude a recovery for complainants), it is recited that, "the Court further finds that there is no legal proof

in the record that the complainants and the defendants claim from a common source, and not having deraigned title the complainants must fail for this reason, as well as the other reasons referred to hereinabove."

There is some parol testimony of witnesses tending to prove that J. R. Hamby sold and conveyed by deed to his brother, E. W. Hamby, the tract of 437½ acres of land here in dispute, prior to the conveyance of 993 acres by E. W. Hamby and wife to Sam Brown in the year of 1892, but the evidence in the record affords no "legal proof" of such conveyance. However, we are of the opinion that such proof was unnecessary, for the reason that the fact thus omitted from the evidence was supplied by the admissions and allegations of the answer of the defendants, wherein it is said that defendants "admit that J. R. Hamby, was at one time the owner of said land, his father and mother having deeded same to him and said deed was made in the early eighties and is of record in the Register's Office at Altamont, Tennessee. That this was a gift and soon afterward the said J. R. Hamby conveyed this land to his brother E. W. Hamby, and on December 8, 1892, W. E. (E. W.) Hamby and wife, Allie Hamby, conveyed to Sam Brown a tract of land containing 993 acres which included the land described in complainants' bill, and on October 25, 1909, the said Sam Brown conveyed to H. B. Northcut all of the said 993-acre tract lying on the sides and top of the mountain but not including any of the valley land or farm on which said Brown lived. That said H. B. Northcut died many years ago seized and possessed of said land in fee simple and the title thereto descended to his three children, T. B. Northcut, Mrs. Tim Moffitt, and J. H. Northcut, and at the death of Mrs. Tim Moffitt several years ago her interest in said land descended to her daughter, Miss Fannie Moffitt."

It is seen that the answer of defendants deraigns the title in controversy "to a common source," viz: E. W. Hamby (Sr.), and wife, Arkansas Hamby, and specifically states that "said J. R. Hamby conveyed this land to his brother E. W. Hamby."

Having thus deliberately asserted in their pleading the deraignment of title to a common source,· the defendants must act consistently therewith throughout the litigation (Stamper v. Venable, 117 Tenn., 557, 561, 562, 97 S. W., 812); and they must adhere to the position thus taken and the affirmation thus made about a matter material to the issues in the case. Gibson's Suits in Chancery (4 Ed.), sec. 67a; Sartain v. Dixie Coal & Iron Co., 150 Tenn., 633, 647, 651, 266 S. W., 313; Bynum v. McDowell, 3 Tenn. App., 340, 457, 358, and other cases there cited.

It was, therefore, error to hold that "the complainants must fail" for the lack of "legal proof" that complainants and defendants claim title from a common source; but this was only one of the reasons (among others) given by the chancellor for the dismissal of

complainants' suit, and, as the decree of dismissal was right for other reasons, it will be affirmed, notwithstanding the error above indicated. Hamby v. Fouche, 15 Tenn. App., 248, 251, and other cases there cited.

It results that the decree of the Chancery Court in this cause (except as against J. R. Hamby, and except that part of said decree pointed out by the sixth assignment of error, supra) is affrmed, and a decree will accordingly be entered here dismissing the bill of all the complainants except J. R. Hamby.

The costs accrued in Chancery Court will be adjudged against all the complainants named in the bill, except J. R. Hamby. The costs of the appeal will be adjudged against all the complainants named in the bill, including J. R. Hamby.

For the reason that J. R. Hamby failed to perfect his appeal, and the decree against him remains in the Chancery Court as if his appeal had been neither prayed nor granted (England v. Young, 155 Tenn., 506, 513, 296 S. W. 14), this court is without jurisdiction to review the decree of the Chancery Court against him, or make any decree with respect thereto, except to dismiss his appeal and render judgment against him for the costs of his attempted appeal, pursuant to section 9110 of the Code, which provides that "Where a suit is dismissed from any court for want of jurisdiction, or because it has not been regularly transferred from an inferior to a superior court, the costs shall be adjudged against the party attempting to institute or bring up the cause." See Physicians, etc., Insurance Co. v. Grigsby, 165 Tenn., 151, 155, 53 S. W. (2d) 381; Markham v. Haddad, 2 Tenn. App., 370, 376.

Crownover and Felts, JJ., concur.

### On Petition for Rehearing.

FAW, P. J. The Chancery Court dismissed the bill of the complainants in this case at their cost, and all of the complainants (ten in number) appealed to this court.

By decree of this court, entered pursuant to a written opinion filed on October 12, 1940, the appeal of J. R. Hamby, one of the complainants below, was dismissed (because of his failure to perfect his appeal) and the decree of the Chancery Court dismissing the bill of all the other complainants was affirmed.

Thereafter a petition for a rehearing and for additional findings of facts was filed on behalf of the appellants, including J. R. Hamby, and the case is now before us for the consideration and disposition of that petition.

We have attentively read, re-read and considered the petition, and we have found therein nothing material to the determination of the issues in this case which was not carefully considered by this court in arriving at the conclusions stated in our former opinion. Aside

from the dismissal of the appeal of J. R. Hamby, substantially all the propositions advanced in the petition for a rehearing were presented and argued in the former brief for appellants, and the full time prescribed by the rules was allowed to, and consumed by, counsel in oral argument at the bar.

We are asked in the petition to "refer to pages 5, 6, 7, 8 and 9 of brief of complainants' counsel and read and consider the authorities therein referred to and make a different and additional finding of fact from what this court has found on page 10 and 15 in fourth paragraph in which the five assignments are overruled."

All of the authorities cited in the brief for complainants above mentioned (which included twenty-eight reported Tennessee cases and some additional citations to the Code, Gibson's Suits in Chancery, Cyc. and Ruling Case Law) were carefully examined prior to, and in the course of the preparation of, our former opinion.

In the opinion in the case of Louisville & N. Railroad Co. v. Fidelity & Guaranty Company, 125 Tenn., 658, 691, 148 S. W., 671, 680, the court said: "A petition for rehearing should never be used merely for the purpose of rearguing the case on points already considered and determined, unless some new and decisive authority has been discovered, which was overlooked by the court. The office of a petition to rehear is to call the attention of the court to matters overlooked, not to those things which the counsel supposes were improperly decided after full consideration." See, also, Melody v. Hamblin, 21 Tenn. App., 687, 705, 115 S. W. (2d), 237.

The appeal of J. R. Hamby was dismissed on motion of the appellees (which motion was filed in writing on January 26th prior to the hearing of the case on February 27, 1940), for the reason that he was attempting to prosecute his appeal on the pauper's oath, when his testimony in the record disclosed the fact that he is a non-resident of the State of Tennessee, and the oath which he filed did not state that he is a resident of Tennessee.

It is conceded in the petition that, in this State, a non-resident is not entitled to prosecute an appeal in forma pauperis; and there is nothing in the cases of Andrews v. Page, 2 Heisk., 634, 641, and Morris v. Smith, 11 Humph., 133 (cited in the petition), which conflicts with our ruling in the instant case that the appeal of J. R. Hamby was not perfected, and must be dismissed.

The question for decision in Andrews v. Page, supra, was not the same, nor analogous to, the question as to the right of J. R. Hamby, a non-resident, to prosecute his appeal in forma pauperis. The generality of the language used in an opinion is always to be restricted to the case before the court, and it is authority only to that extent. Only the points in judgment arising in a particular case before the court are precedents for future decisions. Burns v. Duncan, 23 Tenn. App., 374, 388, 133 S. W. (2d) 1000, and cases there cited.

The appellant in the case of Morris v. Smith, supra, upon the dismissal of his appeal, "sued out a writ of error," and at first sought to prosecute same upon the pauper's oath, but later "filed with the Clerk his bond with security for the prosecution of his writ of error." In disposing of a motion by the appellee to dismiss the writ of error, the court charged that the writ of error bond filed as aforesaid was "sufficient to retain the cause in Court."

In the instant case, there has at no time been an application on behalf of J. R. Hamby to file the record for writ of error, which he might have done upon giving bond with security for the prosecution of the writ of error.

The petitioners request additional findings with respect to a number of specific propositions set out in the petition, some of which are propositions of fact (which we regard as in the nature of evidential facts), and some of which are propositions of law.

In our former opinion in this case, we pointed out the material issues made by the pleadings, and the findings of the chancellor upon these issues, which findings, in our opinion, covered and included each and every material issue on the record; and we then stated, in substance, that, after an examination of the evidence in the record, we concurred in the chancellor's findings, except with respect to one matter which we held (for reasons stated in the opinion) was not material to the result.

We made no detailed statement, or review, of the "voluminous evidence" in the record, and stated, as our reason for not thus extending our written opinion, that "the statute, section 10620 of the Code, requiring this court to make written findings of facts, contemplates that the court shall find only the ultimate, determinative facts upon which its conclusions of law are predicated, and not mere matters of evidence, nor all the separate and disjointed facts which it may consider in arriving at the result;" and we cited in support of the statement just quoted the case of Anderson County v. Hays, 99 Tenn., 542, 552, 42 S. W., 266, and five comparatively recent published opinions of this court.

It is, in substance and effect, insisted in the petition for a rehearing, that it was error to thus omit a review of the evidence, and that, on this point, the case of Anderson County v. Hays, supra, is in conflict with the later case of Hibbett v. Pruitt, 162 Tenn., 285, 36 S. W. (2d), 897; but the petitioners either overlooked or ignored the aforesaid five cases decided by this court in which the same method of disposing of the issues of fact as in the instant case was followed, and in each of which cases the Supreme Court denied a petition for certiorari without criticism of the method which this court had followed in dealing with the facts of the case.

We do not understand the opinion in Hibbett v. Pruitt, supra, as having any bearing whatever upon the point here under consideration.

We endeavored in our former opinion to state the issues and our findings and conclusions in what we regarded as the most appropriate manner, and the petitioners have not satisfied us that there is any occasion for a rehearing or additional findings.

An order will be entered dismissing the petition at the cost of the petitioners.

Crownover and Felts, JJ., concur.