HENRY C. ELLIS, Appellee, v. MARY HELEN
MARSHALL ELLIS, Appellant.—472 S.W. 2d 741

Western Section. May 21, 1971.

Certiorari Denied by Supreme Court October 18, 1971.

Hal Gerber, William D. Marshall, Jr., Memphis, for appellant.

Braxton Gandy, Memphis, for appellee.

NEARN, J. This is an appeal by the wife from the Decree of the Circuit Court of Shelby County finding the wife guilty of cruel and inhuman treatment, granting a divorce to the husband, custody of the minor children of the parties to the wife, and retaining the cause for fur-

ther equitable adjustments. The trial Court, by separate order, fixed the amount of child support.

Counsel for appellant has filed with this Court eleven Assignments of Error. The first two Assignments of Error are both directed to the preponderance of the evidence. The first is that the evidence preponderated in favor of the wife's Cross-Bill and the second is that the evidence did not preponderate in favor of the husband's original Bill. Eight of the remaining nine Assignments of Error allege error regarding evidentiary matters and the one remaining Assignment of Error charges the trial Court with failure to consider the defense of recrimination. (Section 36-818 T.C.A.) relied upon by the wife. We deem it appropriate to first dispose of the evidentiary issues.

It was a theory of the Cross-Bill of Mrs. Ellis that the alleged neglect and lack of attention shown over the years by Mr. Ellis to Mrs. Ellis and their children constituted cruel and inhuman treatment. A major thrust of the Cross-Bill was directed to Mr. Ellis' alleged failure to support the family consistent with his means. The fact that he furnished more than the bare necessities for physical survival was admitted, but it was alleged that he was miserly and stingy with the money he earned insofar as his family was concerned, but liberal when fulfilling his own whims and desires. It was alleged that this attitude of Mr. Ellis was a source of much embarrassment and humiliation to Mrs. Ellis. Further, that while Mr. Ellis managed to acquire boats, airplanes, yachts, and antique cars for his own personal use, he refused to make necessary repairs to the home, furnish funds for Mrs. Ellis to obtain any household help, and

in general failed and refused to support the family in the manner in which their station in life required. Mr. Ellis testified that he adequately supported the family and that over the past several years had spent in excess of $2,000.00 per month, out of a taxable salary of $49,000.00, in support of his family and in an attempt to satisfy Mrs. Ellis' monetary desires. He further testified that in some years he had spent over $30,000.00 in their support and maintenance. Mrs. Ellis denied that Mr. Ellis spent the amounts he claimed on his family and contended that his annual net income far exceeded any amount that was paid in support of the family. Counsel for Mrs. Ellis repeatedly attempted to introduce evidence which allegedly would reveal the true annual net income of Mr. Ellis. The introduction of such evidence was consistently objected to by opposing counsel and sustained by the trial Court. The trial Judge stated that, from the proof already introduced, it was evident that Mr. Ellis was well able to support his family in a reasonable manner, and the questions to be resolved were whether or not he had done so and whether or not he had furnished the amount he claimed to have furnished, which amount was denied by Mrs. Ellis. The trial Judge was of the opinion that the exact amount of Mr. Ellis' income would become relevant only if the proof indicated Mr. Ellis had not paid the amounts of support as he testified and Mrs. Ellis prevailed in her Cross-Bill and was entitled to alimony. In such event, the matter of Mr. Ellis' exact income and holdings would be referred to a Master for determination. The evidence excluded by the trial Judge on this issue has been preserved in the record.

We are of the opinion that the trial Judge was in error in refusing to permit the introduction of such

evidence and in refusing to allow testimony in that regard. The obligation of support is always relative to the income of the obligor. The millionaire husband and the one subsisting on welfare payments both owe a duty of support to their respective spouses, within their means. Since the amount of income or means was disputed, it was germane to the issue and such evidence should have been admitted and considered.

The question now arises as to whether the error of the trial Judge in this case was reversible or harmless error. The evidence amply preponderates that Mr. Ellis expended the amounts testified to by him, excluding an admitted $600.00 per month household allowance to Mrs. Ellis, which allowance had been paid for many years. An analysis by appellant of Mr. Ellis' income tax returns for the years 1965, 1966, 1967, and 1968, is attached to appellant's Brief. Of course, this analysis has not been contradicted or explained by Mr. Ellis as the returns and analysis were excluded by the trial Court and never introduced in evidence, except as an offer of proof; but, taking the analysis as correct, it indicates an average net income in excess of that testified to by Mr. Ellis. However, the record is again ample as to the amounts that have been expended by Mr. Ellis for the support of Mrs. Ellis and their children and, even if his income was as urged by appellant, we are of the opinion that the evidence would yet preponderate in favor of the fact that Mr. Ellis had supported his family in a reasonable manner consistent with his means, whether such means were those as stated by Mr. Ellis or those alleged by appellant. We cannot reverse for error which, in our opinion, would not affect the outcome of the trial below. It is harmless error. Section 27-117 T.C.A.

■ Appellant also assigns as error the action of the trial Court in refusing to consider evidence which happened early in the marriage. The Brief cites us to two such events in the record. In the first cited instance, on cross-examination counsel for appellant sought information from Mr. Ellis about the price of a Cesna airplane purchased in 1956. In the second cited instance, the Court refused to require Mr. Ellis to enumerate every boat of every kind that he had owned in the twenty-three years of marriage; but did permit counsel for appellant to make inquiries about a cruiser purchased in 1952. The assignment must be overruled as we concur with the holding of the trial Court that the testimony was too remote in time or immaterial, or both.

■■ As part of Mrs. Ellis' proof, the witness, Mrs. Helen Marshall, was called to testify. Mrs. Marshall was the former wife of the brother of Mrs. Ellis. The witness testified she possessed a Master of Social Work Degree from Washington University, and had known the Ellis family since shortly after the marriage. Mrs. Marshall was divorced from her husband in May of 1969. The witness was permitted to testify in full regarding the conduct of the parties of which she had knowledge. She was then asked, "Could you tell what part the love of a father plays in the life of a young child?" The trial Court sustained the objection to the question. Appellant cites such action by the Court as error and argues that the witness was an "expert witness" and entitled to give her opinion on the subject. If it could be conceded that the witness was an expert in social work, she is not *ipso facto* an expert in child psychology. Also, the part that love, or the lack of it, plays in family relationships is within the ken of most everyone, especially a trial Judge

experienced in the hearing of domestic relations cases. We must overrule the assignment.

■ Mr. Ellis, the sole owner of the stock of William C. Ellis & Sons, obtained the services of Mark Lipman Service, a company engaged in industrial security work, to survey William C. Ellis & Sons, Inc. An employee of Mark Lipman Service was called to testify for appellant and the witness sought to introduce the reports of the Mark Lipman investigators who had posed as employees of William C. Ellis & Sons, Inc. in order to conduct the survey. The trial Judge refused to allow the reports to be introduced in evidence. We concur in the action of the trial judge. A cursory reading of the reports clearly shows that they are composed of the rankest sort of hearsay plus an opinion of Mr. Ellis' personality based on pure hearsay. For instance, part of the agent's daily report is to the effect that employee "A" told the agent that employee "B" had told employee "A" thus and so. Or to quote directly from the summary, "From an overall consensus of the employees * * *" In our opinion, the reports are not admissable under the 1957 Business Records Act or any other theory. They are not the record of an act, condition or event. They are nothing but an opinion based primarily on hearsay and are not admissable. The Assignment of Error is overruled.

■ An Assignment of Error is also directed to the trial Court's refusal to admit in evidence the report and conclusion of a case worker of the Juvenile Court. This report has also been preserved on appeal. It also suffers from the same evidentiary malady as the Mark Lipman report. The report is the case worker's opinion based on

a compilation of hearsay. Further, the report plainly states that the "facts" concerning Mr. Ellis, upon which the opinion and conclusion are reached, are those given primarily by Mrs. Ellis. The opinion and conclusion are made without any information from Mr. Ellis. In our opinion, the report is hearsay, incompetent and inadmissable. This assignment is also respectfully overruled.

■ Next, the appellant charges the trial Court with error in disallowing in its entirety the testimony of Dr. Mark Ivie, which testimony has been preserved on appeal. Dr. Ivie is a psychiatrist who diagnosed both Mr. and Mrs. Ellis. Some of the examinations of the parties were made jointly; that is, both Mr. and Mrs. Ellis were present and discussed matters in the doctor's presence. Other examinations were made separately. From all of his conversations, Dr. Ivie made his separate diagnosis of the parties. Objection was made to Dr. Ivie's testimony by counsel for Mr. Ellis on the grounds that any communication or diagnosis regarding Mr. Ellis was privileged information and not within the exceptions as set out in Section 24-112 T.C.A., which section is as follows:

"24-112. *Communications between psychiatrist and patient.*—Communications between a patient and a person licensed to practice medicine while acting in the capacity of a psychiatrist shall be privileged communications except in civil and criminal cases and other legal proceedings in which (1) the mental condition of the patient is an issue or (2) it is determined by the court or board having jurisdiction of the matter that the interests of justice require that the privilege be withheld. [Acts 1965, ch. 157, sec. 1.]"

Appellant contends that the communications were not within the purview of the statute because both Mr. and Mrs. Ellis were present during some of the sessions with Dr. Ivie and, therefore, such communications and diagnosis based thereon were not confidential. Further, even if the communications and diagnosis were within the purview of the statute, they are also within the exception that the interests of justice require that Dr. Ivie's testimony be considered by the trial Court. The pleadings make no issue of the mental condition of Mr. Ellis. In reviewing the excluded testimony, it is evident that both Mr. and Mrs. Ellis were seeking treatment from Dr. Ivie in his capacity as a psychiatrist. If Mr. Ellis had sought Dr. Ivie's treatment without the presence of his wife (an alleged third party), there could be no doubt as to the privileged character of the communications. The general rule in this state is that conversations and communications ordinarily privileged, which have taken place in the presence of third parties, are not then privileged. Hazlett v. Bryant (1951) 192 Tenn. 251, 241 S.W.2d 121, and cases cited therein. Of course, the *Hazlett* Opinion was written long before the present statute was enacted granting privilege to communications between psychiatrist and patient. That Court was faced neither with the statute nor the facts now before us. Counsel for the parties, nor this Court, have been able to find any Tennessee cases in point since the enactment of the statute. We have read the cases cited in the Briefs and made independent research of the matter.

In the instant case, there are actually two confidential relationships. One is the psychiatrist and patient confidential relationship, established by Section 24-112 T.C.A., and the other is the confidential relationship of

husband and wife. The legislature has pronounced the public policy of this state in regard to communications between husband and wife by the enactment of Section 24-103 T.C.A., which declares such communications arising out of the marital relationship are privileged.

In the case of Bassil v. Ford Motor Co. (1936) 278 Mich. 173, 270 N.W. 258, 107 A.L.R. 1491, the Michigan Court was called upon to decide the same issue now presented to us. In that case, the Michigan statute declared conversations between patients and physicians to be privileged. The patient was accompanied to the physician by his wife. The doctor's diagnosis was sought to be introduced in evidence. The Michigan Court, in a well-reasoned Opinion, excluded it on the grounds that it was a confidential communication and the wife did not constitute a third party.

We are of the opinion that communications made to a psychiatrist, when the confidential relationship of psychiatrist and patient exists, even though made in the presence of a spouse, are privileged, including any diagnosis made therefrom. This is not to say that the parties themselves, in a divorce action, cannot testify as to statements made by the other spouse under such circumstances, but we do hold that the psychiatrist cannot divulge the privileged communications, whether it be the actual conversations or diagnosis drawn therefrom, unless the patient waives the privilege or it falls within the exceptions. It must be here noted that the record does not reflect that Mr. Ellis ever testified in direct testimony or in cross-examination concerning any statements that he made to the psychiatrist.

This Court cannot treat a spouse as a stranger or a third party to communications which would be privileged without the spouse's presence. To do so would be to ignore reality and weaken the marital relationship. Because of these confidential relationships, we cannot consider either spouse or the psychiatrist as a third party or a stranger to the other.

In the instant case, the confidential relationship of psychiatrist and patient had been established and we hold that the presence, during confidential communications to a psychiatrist, of one sustaining such intimate family relationship as a spouse, does not constitute the presence of a third party so as to void the confidential nature of the communications. Bassil v. Ford Motor Co., supra. We find no error in the trial Court's action in excluding Dr. Ivie's testimony.

The record reflects that this divorce proceeding has been extremely hard fought. The record now before us is that of the second trial of this matter. The first trial was a jury trial and was some two weeks in length. It ended with the jury finding both parties guilty of cruel and inhuman treatment and a new trial for both parties was granted by the trial Judge. This second trial before the same Judge was without the intervention of a jury and required over nine days for its presentation to the Court. Four of the children of the parties were called upon to testify in the matter. Three of these children were minors and one was an adult. The fifth minor child of the parties was emotionally disturbed and unable to testify. The record further reflects, more than adequately, the bitterness of the parties.

Divorce cases, even though tried in the Circuit Court, are Chancery suits and are treated as such. Humphreys v. Humphreys (1954) 39 Tenn.App. 99, 281 S.W.2d 270. Therefore, since the matter was tried without a jury, the hearing in this Court is *de novo* on the record, accompanied by a presumption of the correctness of the Decree below unless the preponderance of the evidence is otherwise. Section 27-303 T.C.A.; Abney v. Abney (1970), 61 Tenn.App. 531, 456 S.W.2d 364. To ascertain whether the preponderance of the evidence is contrary to the Decree requires us to review the matter in its entirety and we have carefully examined the record, consisting of eleven volumes containing 1601 pages and numerous exhibits, and we have reached our conclusion.

Section 27-113 T.C.A. requires that this Court make and file written findings of fact. However, this statutory provision does not require this Court to set out all the evidence upon which such conclusion is based. Hamby v. Northcut (1940) 25 Tenn.App. 11, 149 S.W.2d 484; see also cases cited under Note 16 to Section 27-113 T.C.A.

In cases of the nature of this one, we are unable to perceive any useful purpose in detailing in this Opinion the proof, both pro and con, adduced in open Court. The only result of such action on our part would be to satisfy the inquisitiveness of those who have no interest in this suit but are inordinately concerned about the private affairs of others; or increase, if possible, the bitterness of the parties and the children which has been engendered by this litigation. Neither of these results in our opinion is praiseworthy and we decline to extensively detail the facts in this Opinion. We have reviewed the

entire record and we conclude that the evidence does not preponderate against the finding that the defendant, Mary Helen Marshall Ellis, is guilty of cruel and inhuman treatment. It shall be sufficient to say that, after reviewing the entire matter, we find that there is competent evidence in the record that Mary Helen Marshall Ellis constantly nagged her husband, Henry C. Ellis; that she threatened to kill him; that she publicly embarrassed him; that she stated to him and others that she hated him; and the evidence does not preponderate to the contrary. These acts were testified to by her husband and corroborated in part by his witnesses. Most of these acts were denied by Mrs. Ellis, but the trial Judge saw the witnesses, heard them testify, observed the manner in which they testified, their hesitancy or lack of it in answering questions, and their facial expressions and general demeanor. The nuances of a witness on the stand cannot possibly be preserved in a record and the trial Judge's judgment as to credibility of witnesses should not be overturned unless the clear preponderance of the evidence requires it. Acree v. Acree (1969) 60 Tenn.App. 386, 447 S.W.2d 108. We conclude that the evidence does not preponderate against the finding that the defendant, Mary Helen Marshall Ellis, is guilty of cruel and inhuman treatment and that Henry C. Ellis is not.

Able counsel for appellant also charges that the trial Judge failed to consider the defense of recrimination as set out in Section 36-818 T.C.A. The gist of the statute is that, if proven, the defendant may rely upon the ill conduct of the complainant as a justifiable cause for the defendant's conduct. It is a defense in the nature of a confession and avoidance. We must respectfully disagree with counsel in his conclusion that the trial Court

did not consider the defense of recrimination, as the record indicates the contrary to such conclusion. The Court's Decree of Divorce, after finding Mrs. Ellis guilty of cruel and inhuman treatment, recites:

"* * * and that the petitioner, Henry C. Ellis, gave the defendant, Mary Helen Marshall Ellis, no cause or just excuse for her said misconduct."

This is a clear indication that the trial Court did consider the defense of recrimination. It is evident in the Decree that the defense was considered by the trial Court but was decided unfavorably to the appellant. The evidence does not preponderate against such finding. This Assignment of Error is also respectfully overruled.

Therefore, for the reasons stated, all Assignments of Error are respectfully overruled, the judgment of the trial Court is affirmed, and the cause is remanded to the Circuit Court of Shelby County for such future orders as justice to the parties may require. The costs of this appeal, as were the costs below, are taxed against the husband, Henry C. Ellis.

Carney, P. J., and Matherne, J., concur.