Lorene P. **HENSLEY**, Plaintiff-Appellee,

v.

Arthur G. **HENSLEY**,
Defendant-Appellant.

Court of Appeals of Tennessee,
Eastern Section.

Aug. 21, 1981.

Permission to Appeal Denied by
Supreme Court Nov. 9, 1981.

Ted H. Lowe and Lois B. Shults, with Jenkins & Jenkins, Knoxville, for defendant-appellant.

Edward L. Summers, with Haynes, Meek, Jones & Summers, Knoxville, for plaintiff-appellee.

## OPINION

SANDERS, Judge.

The Defendant, Arthur Hensley, appeals from a circuit court's division of marital properties and award of alimony in solido to the Plaintiff, Lorene Hensley.

The Plaintiff and Defendant were married in 1953. At the time of the marriage they were both juniors in high school. The Plaintiff was 17 years of age and the Defendant was 18. After the marriage they both quit school and the Defendant went to work for TVA. The Plaintiff at the time was working in a drug store but gave up her job at the request of the Defendant and shortly thereafter she became pregnant with their first child. When the first child was five years of age they had a second child and when that child was three years of age they had a third child. In the meantime the Defendant changed his employment to Union Carbide. The Defendant did not want the Plaintiff to work outside the home and she took care of all of the household duties and devoted her time to the Defendant and their children and their welfare. The parties later purchased a farm and both the Plaintiff and Defendant devoted considerable effort to the farming project. In addition to her household duties the Plaintiff did whatever work needed to be done on the farm. She looked after the cattle, ran the tractor and performed other necessary chores. Although the Defendant was a domineering person, the Plaintiff accepted her position as a dutiful wife and mother and they had a happy and congenial marriage.

In the meantime the Defendant had regular advancements in his employment and is now earning a salary in excess of $24,000 per year. In 1978 the parties built a new home on the farm.

In February, 1979, the Defendant, without being able to give any satisfactory reason to the Plaintiff, told her he was going to leave as soon as their son graduated from high school. Without belaboring the details, we think the record shows he had found an interest in some other woman and this was his reason for leaving. When the Plaintiff asked him if there was someone else involved, his reply was, "I refuse to answer that on the grounds it might incriminate me." Although the Plaintiff and their oldest daughter, who was 26 years of age at the time, tried to persuade the Defendant not to leave, he insisted on doing

so. He stated that the Plaintiff had "been a good wife and a good mother." He stated to the Plaintiff, "I am selfish. I know this is not right for anybody but me." He moved out of the home in September, 1979. For the following three months he gave the Plaintiff some money to pay her bills but did not give her enough to live on and the oldest daughter had to give her money to help her pay her expenses. Since the Defendant was not giving the Plaintiff enough to live on, she filed a suit for separate maintenance. The court fixed temporary alimony at $400 per month and allowed the Plaintiff to keep $137.50 which she was collecting as rent each month on the property.

The Defendant filed an answer and cross-bill in which he charged the Plaintiff with cruel and inhuman treatment. He also asked for a divorce and an equitable division of the property.

The case was heard by the chancellor on September 30, 1980. Upon the hearing the Plaintiff took the position she did not want a divorce. She only wanted a divorce from bed and board. The Defendant, however, took the position that he wanted the court to grant an absolute divorce. After hearing the testimony of the Plaintiff and the Defendant, the court asked Defendant's counsel if he was willing to stipulate the Plaintiff was entitled to a divorce. He said he would do so on the condition an absolute divorce was granted. The court announced he was going to grant the Plaintiff an absolute divorce although she steadfastly insisted she only wanted a divorce from bed and board. It was her hope that the Defendant would see the error of his ways and there could be a reconciliation.

After deciding to grant an absolute divorce, the court then reached the issue of dividing the marital property and awarding alimony. In doing so he awarded the Plaintiff the home and 165 acres of farm land on which it was located together with the farm machinery. He gave her the household furnishings and a 1973 model Nova automobile. He gave the Defendant a 28.5-acre tract of land, part of which was owned as tenants in common with the Defendant's father. He gave the Defendant two savings accounts of $12,000, a piece of heavy equipment called a highlift with a value of approximately $7,000 and a 1978 model Datsun automobile, certain tools and shop equipment and all of his personal belongings including a gun collection. The court also ordered the Defendant to pay the Plaintiff's attorney's fees in the sum of $3,000.

After the court had announced his award, he stated that temporary alimony which had been previously awarded would be terminated. However, the Defendant filed a notice of appeal which left the Plaintiff without property or support pending the appeal. The Plaintiff filed a petition asking the court to reinstate the temporary alimony pending the appeal, which the court did.

The first issue which the Defendant presents on appeal is whether or not the division of the parties' marital property was just and reasonable as prescribed by T.C.A. § 36–825.

In making his award the court did not say under what statute he was proceeding but we think it is fair to say that he was proceeding under T.C.A. § 36–820, 36–821 and 36–825. Although the Defendant took the position that the Plaintiff should have only one-third of the marital property, the court held she was entitled to one-half of the marital property. The court also took the position that he did not like to make awards of alimony in futuro if he could make an award of alimony in solido. We accordingly construe the court's holding to be that the Plaintiff was entitled to one-half of the total marital property and the extent to which it exceeds that amount to be alimony in solido.

■ The value of the total marital properties of the parties is approximately $220,500, broken down as follows: 165 acres of farm land which went to the wife, $99,000; residence to the wife, $70,000; 1973 Nova automobile to the wife, $1,200; farm machinery to the wife, $6,000; household goods to the wife, $7,500; one-half interest in 28.5 acres of land to the husband, $8,550;

savings accounts to husband, $12,000; 1978 Datsun to husband, $5,000; guns, shop equipment and tools to the husband, $4,250; highlift to the husband, approximately $7,000. Of the marital estate, the Plaintiff, being entitled to one-half, would receive $110,250 and the Defendant would be entitled to the same amount. The wife was awarded properties at a total value of $183,700 and the Defendant was awarded properties at a value of $36,800. This amounts to an award of alimony in solido to the Plaintiff of $73,450 which, under the circumstances, we think was totally fair and reasonable.

The Plaintiff is now approximately 45 years of age. She has never been employed except when she worked in a drug store as a teen-ager. She has no skills and any employment she could secure would probably be at minimum wage. On the other hand, while the Plaintiff has been at home in the role as homemaker, the Defendant has been improving his skills and now draws in excess of $24,000 per year. In a divorced state the Plaintiff has no future security except what the court has given her. She has earned no Social Security benefits nor does she have any medical or hospital insurance. On the contrary, the Defendant has not only accrued Social Security benefits but has accrued retirement benefits that would pay him at least $550 per month if he elects to take early retirement at age 52. He also has a savings plan and group insurance with his employer. After 27 years of marriage all of the fringe benefits as well as the vested benefits designed to protect an employee and his family now fall to the Defendant and the Plaintiff is robbed of the security she was entitled to look forward to. Although some courts hold that retirement benefits which have not vested are not marital property subject to equitable division, the majority of jurisdictions hold that they are "economic circumstances" of the husband in determining a joint division of marital property. See *Mitchell v. Mitchell* (1978), 195 Colo. 399, 579 P.2d 613, 94 A.L.R.3d, beginning at 176 and *Whitehead v. Whitehead*, Tenn. App. (1981) unpublished, filed February 4, 1981.

■ We also think the court was correct in awarding alimony in solido rather than alimony in futuro, as the Defendant had indicated to the Plaintiff that he would not pay alimony and would leave the State of Tennessee before doing so. He now denies that he would refuse to obey the court's orders but we think his admitted perjury in this case belies his credibility. In that regard he testified as follows on cross-examination:

"Q. Now, Mr. Hensley, during these proceedings, you have deliberately tried to hide some assets from this court; have you not?

"A. You might say that.

"Q. All right, sir, as I understand it, you sold a highlift for $15,000 and collected the money in November of '79, after you had left?

"A. That was a bulldozer.

"Q. A bulldozer, I am sorry. And at a previous hearing in this court when you were asked what happened to the $10,000 that was not used to pay off a loan, you indicated that you had lost it or misplaced it; is that correct?

"A. Yes, sir.

"Q. That wasn't true; was it?

"A. No, sir.

"Q. At a subsequent hearing you indicated that you had loaned the $10,000 to Milo Sweet (phonetically) and he had gambled it and lost it; didn't you?

"A. I think I testified during the deposition up there that day—

"Q. I am talking now at a second hearing in this court before the Honorable Judge McMurray.

"A. That was in April?"

We think the inclination of the Defendant to try to conceal his assets from the court and then swear falsely about it was a very compelling reason for the court to award alimony in solido. In the case of *Rains v. Rains*, 58 Tenn.App. 214, 428 S.W.2d 650 (1968) the court, in addressing

the award of real estate to the wife as alimony, said:

"At the time of the Toncray decision, 'estate' figured largely in the ability of a man to provide for himself and his dependents. In the intervening years from 1910 to the present time, the economy of our society has changed to an emphasis upon earning capacity rather than 'estate.'"

With this thought in mind, it should be pointed out that there is no way the Plaintiff can ever, at this late date in life, hope to approach the earning capacity of the Defendant and this is a very valid reason for the chancellor's award. In the case of *Witherspoon v. Witherspoon,* 55 Tenn.App. 484, 402 S.W.2d 492 (1966) the court, in addressing the award of real estate to the wife as alimony, said:

"As was said in *Hamby v. Northcut,* 25 Tenn.App. 11, 149 S.W.2d 484, in case of a divorce a vinculo procured at the suit of the wife the court may vest in the wife absolutely a specific portion of the real or personal estate of the husband. This well known rule has been followed in cases too numerous to mention.

"In the more recent case of *Grant v. Grant,* 39 Tenn.App. 539, 286 S.W.2d 349, it was pointed out that a trial court is vested with wide discretion in matters of divorce, alimony, attorneys fee, and custody and support of minor children, and that reviewing courts will not interfere except on a showing of abuse of discretion. Again it is pointed out in *Grant v. Grant,* supra, that the statute, as embraced in Section 36–825, T.C.A., is not mandatory but leaves it within the discretion of the trial judge as to the vesting and divesting of title."

■ The Defendant argues that the court erred in making the award of property to the Plaintiff because it would result in a taxable gain to him. Since the court transferred the property in kind and not as representative of any value, this argument is without merit.

We not only failed to find any abuse of discretion of the chancellor, but concur in his findings in the division of marital property and the fixing of alimony in solido.

The Appellant's second issue is whether or not the court erred in ordering him to pay the Appellee's attorney's fees.

■ It is held in innumerable cases in this state that the award of attorney's fees to a wife upon the successful conclusion of her suit is treated as part of the expenses incident to the case. *Sanders v. Sanders,* 40 Tenn.App. 20, 288 S.W.2d 473; *Humphreys v. Humphreys,* 39 Tenn.App. 99, 281 S.W.2d 270. The rule pertaining to consideration to be given on appeal to the fixing of attorney's fees by the trial court is stated in the case of *Grant v. Grant,* 39 Tenn.App. 539, 286 S.W.2d 349, at 350, as follows:

"The general rule is that the Trial Court is vested with wide discretion in matters of divorce, alimony, and attorneys fees, custody and support of minor children, and Appellate Courts will not interfere except upon a showing of an abuse of that discretion. *Marmino v. Marmino,* 34 Tenn.App. 352, 238 S.W.2d 105."

Again we concur with the trial court and find no abuse of discretion.

The Appellant's third issue is whether or not the court erred in reinstating the temporary alimony pending the appeal.

■ The Appellant cites us to no authority to support his argument that this was error, and we find none. On the contrary, our Supreme Court, in the case of *Rutledge v. Rutledge,* 196 Tenn. 438, 268 S.W.2d 343 (1954), held that such action by the trial court was proper. *Also see Crabtree v. Crabtree,* 28 Tenn.App. 373, 190 S.W.2d 319 (1945) and Rule 62.03, Tennessee Rules of Civil Procedure. When the Defendant filed timely notice of appeal this suspended the effectiveness of the court's decree and the Plaintiff was cast in the same position she occupied before the trial of the case. She was not at liberty to use any of the property for her support until the final determination of the appeal. She was totally without funds for living expenses pending the ap-

peal. Again, the granting of the temporary alimony was within the discretion of the chancellor and will not be disturbed on this appeal.

The issues are found in favor of the Appellee. The decree of the chancellor is affirmed and the cost of this appeal is taxed to the Appellant.

PARROTT, P.J., and FRANKS, J., concur.